JIM JOHNSON HOMES,
INC., Plaintiff,

v.

MID–CONTINENT CASUALTY
COMPANY, Defendant.

No. 4:02–CV–758–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Feb. 12, 2003.

---

**6.** *Joint Appendix,* at 60.

Mario R. Verna, Bush & Motes, Arlington, TX, for plaintiff.

Aaron Linzy Mitchell; Thompson Coe Cousins & Irons, Dallas, TX, for defendant.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

Before the court for consideration are a motion for partial summary judgment filed by plaintiff, Jim Johnson Homes, Inc., on November 20, 2002, and a motion for summary judgment, as amended, filed by defendant, Mid–Continent Casualty Company, on February 7, 2003. After having reviewed the motions, responses thereto, supporting briefs, supporting summary judgment evidence, relevant parts of the record in this action, and pertinent legal authorities, the court has concluded that plaintiff's motion should be denied and that defendant's should be granted.

### I.

#### Nature of the Litigation

This action is before the court based on diversity jurisdiction. Texas substantive law controls.

In its live pleading (first amended complaint), plaintiff seeks a declaratory judgment decreeing that defendant has an obligation under a liability insurance policy issued by defendant to plaintiff to defend plaintiff in mediation and arbitration proceedings (referred to collectively as the "arbitration") in which plaintiff, a home builder, has been, and continues to be, involved with a couple, Mr. and Mrs. Jeter (the "Jeters"), for whom plaintiff agreed to build a home. In addition, plaintiff seeks to recover legal expenses already incurred by it in defense in the arbitration, extra-contractual damages and penalties related to the conduct of defendant in declining to provide the defense requested by plaintiff, and attorneys' fees incurred in pursuit of this action.

Defendant responded with an amended answer denying that it has, or has had, any obligation under the insurance policy to provide a defense to plaintiff in the arbitration, or that it has engaged in any conduct that would justify an award to plaintiff of attorneys' fees of any kind or any extra-contractual damages or penalties. By a counterclaim filed with its amended answer, defendant seeks a declaration that, as well as not being obligated to defend plaintiff in the arbitration, it will not be obligated to indemnify plaintiff, in whole or in part, for any arbitration award the Jeters may obtain against plaintiff.

## II.

### The Motions for Summary Judgment

Plaintiff's motion seeks summary judgment as to all claims it asserts against defendant except its claims based on alleged violations of article 21.21 of the Texas Insurance Code. The ground of the part of its motion seeking a declaratory judgment that defendant has an obligation to defend plaintiff in the arbitration is that the "claims in the arbitration constitute an 'occurrence' as required for coverage under the policy." Br. in Supp. of Pl.'s Mot. at 2. Plaintiff reasons from that alleged fact that defendant breached the insurance policy by declining to defend. The other ground of the motion is that defendant's refusal to defend plaintiff in the arbitration constituted a violation of article 21.55 of the Texas Insurance Code, with the result that plaintiff is entitled to recover the penalties provided by that statute.

As initially filed on December 10, 2002, defendant's motion was for partial summary judgment, asking for a declaration that defendant is not obligated to defend plaintiff in the arbitration and that it has no liability to plaintiff under article 21.55, but not seeking summary adjudication as to whether it would have an obligation to indemnify plaintiff if the Jeters were to succeed in the arbitration. In a telephone conference with counsel on January 29, 2003, the court advised counsel of the court's tentative conclusion that defendant's motion for partial summary judgment should be granted, and plaintiff's denied. Pursuant to leave granted during the conference, defendant has filed its amended motion for summary judgment, seeking summary adjudication as to all claims of plaintiff, and all relief sought by defendant through its counterclaim. The grounds of defendant's motion, as amended, are that:

1. The claims made by the Jeters against plaintiff in the arbitration do not qualify for coverage under the basic insurance agreement of the insurance policy because the Jeters are not claiming "property damage," as defined in the policy, caused by an "occurrence," as defined in the policy.

2. Even if the Jeters' claims qualified for coverage under the basic insuring agreement, there would be no coverage because of certain policy exclusions, one having to do with property damage to real

property on which plaintiff or any of its subcontractors is performing work, another having to do with the necessity to repair, restore, or replace a part of any property because work done on the property by or on behalf of plaintiff was incorrectly performed, and the third having to do with damage to property that has not been physically injured, arising out of inadequacies of work done by or on behalf of plaintiff or failures of plaintiff, or anyone acting on its behalf, to perform a contract in accordance with its terms.

3. Therefore, defendant has no duty to defend plaintiff in the arbitration, defendant will not be obligated to pay any award made in the arbitration, and there is no basis for plaintiff's claims for extra-contractual damages and penalties.

## III.

*A Description of the Claims Being Made by the Jeters Against Plaintiff*

The arbitration is being conducted through the American Arbitration Association pursuant to a mediation and arbitration provision in the home construction contract between the Jeters and plaintiff. Mediation and arbitration were demanded by the Jeters in April 2002. They amended their demand in June 2002, and a second time in December 2002. The demand for mediation and arbitration is against plaintiff and its president, Jim Johnson ("Johnson"). The first and second amendments are essentially identical except that in the second the Jeters increased their claim for actual damages from $196,122.13 to $259,537.49. The court's description, set forth below, of the Jeters' claims is based on the contents of the second amended demand.

On January 10, 2001, the Jeters contracted with plaintiff for plaintiff to build a home for the Jeters on land they owned in Alvarado, Texas, for $779,500.00, subject to additions and deductions by change orders.

Plaintiff and Johnson arranged for the preparation of the plans and drawings for the home, and they assured the Jeters that the home would be constructed with the design features desired by the Jeters.

Not long after construction began, the Jeters encountered problems with the work. They observed that the foundation was being constructed in a manner contrary to the foundation plan and the foundation engineer's directions. The foundation problems were brought to the attention of plaintiff; and, Mr. Jeter was led to believe that the problems were corrected, but later discovered that they were not properly corrected.

Other problems manifested themselves after the framing of the home began. There were numerous problems with the design of the home, as reflected by the plans and specifications plaintiff and Johnson had provided, that made it impossible to complete the framing as would be required for the home to be as specified by the Jeters. Other deficiencies were noted during the construction. No provision was made in the plans for water heaters. Plaintiff and Johnson changed interior exposed, solid-cedar beams to "boxed" beams without the Jeters' consent. The roof overhang and ceiling areas were not constructed as the Jeters expected.

The problems mentioned above, as well as others, were brought to the attention of plaintiff and Johnson in writing and otherwise. A meeting was held on July 11, 2001, for discussion of problems related to the construction. During the meeting, Mr. Jeter made known that he considered plaintiff in breach and default under its contract because it refused to construct the home as the Jeters desired. As a result of that meeting, plaintiff stopped work altogether, and abandoned the project and contract. Thereafter, plaintiff refused to perform any work un-

der the contract unless the Jeters paid an additional $17,000.00; and, plaintiff then removed its subcontractors and materials from the job and did not return. As a consequence, plaintiff and Johnson completely failed to correct the design and construction deficiencies, and failed to take action as required to make sure deficiencies were corrected before it was too late in the construction process to do so. Accordingly, in August 2001, and pursuant to a provision in the contract, the Jeters terminated the contract because of plaintiff's material breach and default.

Before the contract was terminated, the Jeters noticed cracking in the foundation. They were told by plaintiff and Johnson that they were seeing normal shrinking cracking. Engineers hired by the Jeters discovered that the cracking was the result of the failure to properly construct the foundation. The foundation system was not constructed in accordance with the plans and specifications, or in a good and workmanlike manner. According to the engineers, the defects in the foundation rendered it unsuitable for the home that was to be constructed. As a result, the entire foundation, as well as the partial framing that has been constructed on it, must be demolished so that the foundation can be rebuilt. The defects in the foundation cannot be repaired or corrected.

After arbitration commenced, the Jeters discovered that a representation made by plaintiff that the piers and foundation of the home would be designed and inspected by a registered engineer was false. No such inspection occurred.

The Jeters described their damages as of the submission of their second amended demand as follows:

> As of this time (through the Jeters' attorneys' last billing), the Jeters have expended, or will expend, the following, which includes substantial amounts paid

to Johnson Homes for work not yet done on the home, and have been damaged as follows:

| | |
|---|---|
| $ 2,000.00 | Design deposit paid to Johnson |
| 1,000.00 | Soil test fee paid to Johnson |
| 8,000.00 | Balance of initial deposit paid to Johnson |
| 800.00 | Appraisal fee paid to CNB for interim loan |
| 10,002.00 | Geothermal deposit |
| 220.00 | Change order for extending slab at breezeway |
| 587.00 | Deposit for Tyvek house wrap |
| 50.00 | Estimation fee paid to Johnson |
| 11,047.15 | Cost of windows paid by Jeter |
| 8,909.79 | Closing costs on interim loan |
| 34,500.00 | First draw paid to Johnson |
| 19,500.00 | Second draw paid to Johnson |
| 6,000.00 | Third draw paid to Johnson |
| 47,000.00 | Fourth draw paid to Johnson |
| 9,804.94 | Interest on interim loan |
| 61.00 | Electrical service during construction |
| 95.00 | Water service during construction |
| 20,000.00 | Estimated cost of demolition and haul away |
| 35,256.25 | Attorneys' fees through November 15, 2002 |
| 23,925.50 | Engineering fees through November 15, 2002 |
| 4,371.65 | Deposition fees |
| 13,332.50 | Fees paid to the American Arbitration Association through November 15, 2002 |
| 3,074.71 | Miscellaneous expense |
| $259,537.49 | TOTAL |

App. to Def.'s Br. in Supp. of Mot. at 64.

The basic claims and theories of relief asserted by the Jeters against plaintiff in the arbitration are (1) breach of contract, (2) violation of the Texas Deceptive Trade Practices Act, and (3) fraud based on false representations plaintiff and Johnson made to the Jeters regarding the design and construction of the home to induce the Jeters to enter into the contract. Alternatively, the Jeters allege that plaintiff "was guilty of negligence that was a proximate cause of the Jeters' damages as set forth [in the second amended demand]." *Id.* at 66. In particular, the Jeters asserted that:

> Johnson Homes was negligent in (a) designing and constructing the improvements made the basis of this action, and (b) retaining, employing and supervising its designers, employees, engineers and subcontractors that performed work on the improvements. Further in the alter-

native, Johnson Homes' employees and subcontractors committed negligent acts and/or omissions in the course of constructing the improvements that were a proximate cause of the damages sustained by the Jeters as set forth above, and for which Johnson Homes is vicariously liable.

*Id.*

As relief, the Jeters seek (1) rescission of the contract and restitution of all amounts paid to plaintiff, (2) reasonable and necessary attorneys' fees from plaintiff and Johnson pursuant to various Texas statutes, (3) damages sustained by the Jeters, as itemized in the second amended demand, and, (4) pursuant to the terms of the contract between the Jeters and plaintiff, recovery of their attorneys' fees, arbitration fees, court costs, and other expenses incurred.

## IV.

*Pertinent Parts of the Insurance Policy*

The insurance policy in question, policy number 04–GL–000048452, provides commercial general liability insurance coverage to plaintiff, as the named insured, for the policy period January 1, 2001, to January 1, 2002. Defendant is obligated by the policy to pay "sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which [the] insurance applies." App. to Def.'s Br. at 9. The policy imposes on defendant the "duty to defend the insured against any 'suit' seeking those damages." *Id.* The word "suit," as used in the policy, means "a civil proceeding in which damages because of ... 'property damage' ... to which [the] insurance applies are alleged," including "[a]n arbitration proceeding in which such damages are claimed and

to which the insured must submit or does submit with [the insurance company's] consent...." [1] *Id.* at 21.

The "insurance applies to ... 'property damage' only if ... the 'property damage' is caused by an 'occurrence.'" *Id.* at 9. The word "occurrence" is defined in pertinent part to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 20. The policy's definition of "property damage" is, in pertinent part, "[p]hysical injury to tangible property ...." *Id.* at 21.

Two potentially applicable exclusions in the policy, exclusions j.(5) and (6), read, in potentially pertinent part, as follows:

This insurance does not apply to:

j. "Property damage" to:

  .    .    .    .    .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arise out of those operations. This exclusion does not apply to liability assumed under a sidetrack agreement; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. This exclusion does not apply to liability assumed under a sidetrack agreement or to "property damage" included in the "products-completed operations hazard".

*Id.* at 34. Another exclusion on which defendant relies is exclusion m., which provides that the insurance does not apply to

---

1. The court's impression is that the "arbitration proceeding" language was added to policies of this type because of the frequency with which insureds and their insurance carriers are forced to arbitration by alternative dispute resolution practices employed by both state and federal courts.

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

*Id.* at 12. The term "impaired property," as used in exclusion m., is defined as follows:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

*Id.* at 19.

## V.

### Analysis

A. *This Case is Suited for Summary Disposition*

This action is particularly suited for summary disposition under the rules and standards expressed by the Supreme Court in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no genuine dispute as to any material fact. The court need only look to the undisputed facts in light of controlling legal principles to determine whether, in the first instance, they contain the elements of plaintiff's claim of coverage, and then, if they do, whether the elements of any policy exclusion on which defendant relies exist.

### B. *The Burdens of Proof*

In a diversity action such as this, the law of Texas determines which party has the burden of proof on pertinent issues of fact. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.*, 783 F.2d 1234, 1240 (5th Cir.1986). Texas law places the burden of proving the existence of coverage under an insurance policy on the party claiming it.[2] *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir.1998). On the other hand, since 1991 in Texas an insurer has had the burden of proving the applicability of any exclusion in the policy. *Id.; see also Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. App.—San Antonio 1994, writ denied); TEX. INS. CODE § 21.58(b). However, the insured has the burden to prove the applicability of an exception to an exclusion. *Vic Mfg. Co.*, 143 F.3d at 193.

---

**.2.** Under Texas law, the burdens of proof in a declaratory judgment action brought by an insurer seeking a declaration of non-coverage are the same as they would be if the action had been brought by the insured against the insurance company claiming the existence of coverage for a particular claim or event. *See Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 350 (1955); *McCart v. Cain*, 416 S.W.2d 463, 465 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.). Thus, the burdens of proof related to defendant's counterclaim are the same as they would be if plaintiff had sued to enforce a payment or indemnity obligation under the insurance policy.

### C. Duty to Defend vs. Duty to Indemnify

■ An insurer's duty to defend and duty to indemnify are distinct and separate. *See Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex. 1997). However, the scope of the insurance coverage determines the outcome of both inquiries. If the claims alleged against the insured are outside the scope of the coverage, there obviously is no duty to indemnify. Similarly, "[i]f a petition against an insured alleges only facts that are not covered by the policy, the insurer is not required to defend." *Folsom Invs. v. Am. Motorists Ins. Co.,* 26 S.W.3d 556, 559 (Tex.App.—Dallas 2000, no pet.). As one Texas appellate court explained, "[t]he court will not imagine factual scenarios that might trigger coverage or read facts into the pleadings"; and, "[i]f a petition does not allege facts within the scope of the coverage, an insurer is not legally required to defend the suit against its insured." *Devoe v. Great Am. Ins.,* 50 S.W.3d 567, 570 (Tex.App.—Austin 2001, no pet.).

### D. Duty to Indemnify is Ripe for Adjudication

■ The requirement in federal court that an actual controversy exist before a declaratory judgment can be issued is satisfied in an action such as this even though the arbitration has not proceeded to an award. *See Am. States Ins. Co. v. Bailey,* 133 F.3d 363, 368 (5th Cir.1998) (saying, "[a]n actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment"). As the Fifth Circuit explained in *Bailey,* "[g]iven that the district court was going to decide the issue of the duty to defend ..., it was not an abuse of discretion for the district court also to decide the issue of the duty to indemnify." *Id.* at

368–69. Thus, this court has jurisdiction to rule on the duty to indemnify despite the fact that an award has not been rendered in the arbitration. *Id.*

### E. There Is No Insurance Coverage for the Claims Alleged in the Demand for Arbitration.

■ In the instant action, the demand for mediation and arbitration constitutes the "petition" to which the court must look to determine if the allegations against the insured are of only facts that are not covered by the policy. For the reasons given below, the court is satisfied that the claims the Jeters are making against plaintiff in their demand are outside the scope of the coverage provided by defendant through the insurance policy in question. And, the court is convinced that no facts are alleged in the demand that would bring the claims the Jeters are making against plaintiff potentially within the scope of the insurance coverage. Even if all the allegations made in the demand were accepted at face value, they could not invoke a duty under the insurance policy to defend or indemnify.

### F. Reasons for the Court's Conclusion of Non–Coverage

#### 1. Purpose and Limitations of Comprehensive Liability Insurance for a Builder

■ Before turning to a consideration of applicability of specific policy language, the court notes that, as a general proposition, the purpose of comprehensive liability insurance coverage for a builder is to protect the insured from liability resulting from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that product. *See T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.,* 784 S.W.2d 692, 694–95 (Tex.App.—Houston [14th Dist.] 1989, writ denied). As the court

observed in Bateson, "[t]he justification for treating these risks differently is that the insured can control the quality of the goods and services he supplies, while accidental injury to property or persons exposes him to almost limitless liability." *Id.* at 695. The *Bateson* court added that if an insurance policy were to be interpreted as providing coverage for construction deficiencies, the effect would be to "enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work." *Id.* (internal citation omitted.) This simply is not the intended function of liability insurance.

In effect, plaintiff is asking the court to give the insurance policy in question attributes of a contractor's performance bond, guaranteeing to the owner that the contractor will perform the construction agreement between the parties in a workmanlike manner and in accordance with the terms of the contract.[3] None of the language of the insurance policy suggests that the policy was intended to serve as a performance bond as well as a typical liability insurance contract.

Indeed, plaintiff is asking that the court go even a step further by construing the insurance policy as protecting it from loss it would suffer from a rescission of its contract with the Jeters. No matter what names are attached alternatively to the claims made, and relief sought, by the Jeters, in the end the Jeters are asking that their contract with plaintiff be rescinded, *i.e.,* that they be put back in the position they would be in if there had been no contract and if plaintiff had done no work on their property. The court has concluded that there is no conceivable

stretch of the language in the insurance policy that would cause it to have coverage that broad.

### 2. There Was No "Property Damage" Caused by an "Occurrence"

■ Furthermore, the better reasoned authorities hold that claims such as the Jeters are making against plaintiff are not claims of accidental damage to property, with the consequence that the statement of such a claim does not allege an "occurrence" within the meaning of the insurance policy. A case in point is *Devoe,* 50 S.W.3d 567, in which the allegations in the suit by the homeowners against the builder with whom they had contracted to build their home were that the contractor breached the contract by failing to construct the residence in a good and workmanlike manner. The insurance company refused to defend that suit; and, the homeowners obtained a default judgment against the contractor. Thereafter, the homeowners sued Great American under the liability insurance policy it had issued to the builder, seeking recovery as third-party beneficiaries under the terms of the policy.

■ Great American's policy had basically the same coverage language as the one at issue here. The Texas court held that the homeowners "[did] not allege any event or series of events that could be construed as an accident," and explained that the

"home was constructed over a period of time as a voluntary and intentional act by the insured, and the alleged deficient and substandard construction did not constitute an accident or an occurrence under the plain-meaning rule even if the resulting, poorly constructed home was

unexpected, unforeseen, or unintended by the insured."[4]

*Id.* at 572. The words used by the *Devoe* court in finding that there was no coverage are a perfect fit for this action. The Jeters' complaint is that plaintiff did not do what he had contracted to do in the construction of their home. The construction work went on over a period of time, and a fair inference from the Jeters' allegations in their demand is that the things about which they are complaining were done voluntarily and intentionally by plaintiff. The Jeters are complaining of deficient and substandard construction, not an accident or an occurrence.

Another Texas case in which an insurance company prevailed as to claims arising from a dispute between a homeowner and the home builder is *Hartrick v. Great American Lloyds Insurance Co.*, 62 S.W.3d 270 (Tex.App.—Houston [1st Dist.] 2001, no pet.). The insuring language in the Great American Lloyds policy was basically the same as the insuring language in the policy issued by defendant. The contractor in *Hartrick* had failed to comply with implied promises imposed on it as a matter of law as a home builder by not preparing the soil properly and not constructing the foundation properly. As a result of those failures, there was a pitching and heaving of the foundation that resulted in damage to the house and loss of market value. In an earlier action, the contractor had been found legally responsible to pay damages to persons claiming through the homeowner because of the contractor's breach of its implied warranties of good and workmanlike construction and suitability for habitation. The court held as a matter of law that those damages were the reasonably foreseeable results that would ordinarily flow from the build-

er's failure to comply with its implied warranties to properly prepare the soil, to clear the land properly, and to build a house on a foundation strong and thick enough to support it. The Texas court concluded that the liability of the insured was not the result of an accident, and, therefore, was not caused by an "occurrence," with the consequence that Great American Lloyds had no insuring obligation under the policy.

■ The court recognizes that the recovery against the builder in *Hartrick* was not based on any finding of negligence; and, the court is aware of the language used in *Hartrick* suggesting that at least certain liability insurance policies are designed to protect the insured from the consequences of the insured's negligence. 62 S.W.3d. at 276. However, there is no reading of *Hartrick* or any Texas court decision the court has found that reasonably would lead to a conclusion that the mere characterization, alternatively made, that a contractor's failure to properly perform a building contract was negligent is sufficient to convert claims based on breach of express and implied covenants and warranties in a building contract into a claim for recovery of property damages caused by an accident within the meaning of a liability insurance policy.

Alternative, conclusory allegations of negligence such as the Jeters made in their demand cannot serve to overcome the specific facts, as set forth in the demand, when, as here, those facts quite clearly demonstrate that the real complaint is that plaintiff did not live up to his contractual obligations to build their house properly. Artful pleading suggesting that plaintiff's acts were negligent or reckless "cannot overcome the basic facts underly-

---

4. The "plain-meaning rule" is that the court must give the words of an insurance policy their plain meaning if the words are unambig-

uous and susceptible of only one construction. *Devoe,* 50 S.W.3d at 571.

ing [the] claims." *Bailey,* 133 F.3d at 372. The allegation that plaintiff was negligent is simply an embellishment on, and a re-characterization of, the basic breach of contract and fraud claims the Jeters assert in their demand.

██ The duty to exercise care that the Jeters alternatively claim defendant violated arose from plaintiff's express and implied contractual obligations. The focus here, as it should be in all cases of this kind, is not on the characterization given by the homeowners of their claim against their builder, but is on whether the evidence would support findings invoking the insurance coverage.

### 3. *The Exclusions Would Prevent Coverage in Any Event*

██ Not only has plaintiff failed to carry its burden to establish that the claims made by the Jeters against it are within the scope of defendant's basic insuring obligation, defendant has shown that, even if plaintiff had carried its burden, policy exclusions are applicable. Assuming for the sake of discussion that there was "property damage" caused by an "occurrence," within the meaning of the insuring obligation of the policy, the only property that the Jeters alleged was damaged is the property on which defendant was working pursuant to his contract with the Jeters. And, the damage allegedly was caused by the work of defendant or its subcontractors. Thus, exclusion j.(5) applies.[5] Exclusion j.(6) would apply as well because the damage would be to property that "must be restored, repaired or replaced because [plaintiff's work] was incorrectly performed on it."[6] App. to Def.'s Br. at 34.

In discussing the effect of exclusions similar to j.(5) and (6), the Fifth Circuit, applying Texas law, explained in *Hartford Casualty Co. v. Cruse* that:

> Thus a contractor cannot recover from the insurer for "his own failure to perform his contract," but can recover for damage other than to his own work, whether or not that work is defective.

938 F.2d 601, 603 (5th Cir.1991) (internal citations omitted). Consistent with other decisions applying Texas law, the Fifth Circuit made the distinction in *Cruse* between damage to the work being performed by the insured and damage caused by the insured to other work or property, explaining:

> Considered in tandem with the business risk exclusion, the "occurrence" requirement illuminates the allocation of risk. Direct (as opposed to consequential) damages that naturally follow from a breach of contract are conclusively presumed to have been in the contemplation of the parties and may therefore constitute expected or intended damages. A comprehensive general liability policy does not cover this cost of doing business. A builder who fails to abide by the specifications of a contract, for example by substituting a weaker building material, may by that breach produce expected property damage to his or her work, and may thus fail to show a covered "occurrence."

*Id.* at 604–05; *see also Travelers Ins. Co. v. Volentine,* 578 S.W.2d 501, 503–04 (Tex. Civ.App.—Texarkana 1979, no writ). With reference to an exclusion comparable to exclusionary language contained in the insurance policy in question, the Texas court said in *Volentine* that:

---

**5.** There is no suggestion in the record that the "side track agreement" exception to exclusions j.(5) and (6) is potentially applicable here.

**6.** The "products-completed operations hazard" exception to exclusion j.(6) is inapplicable in this case.

Similar and even identical policy provisions have on many occasions been construed by the courts, and it has been uniformly held that a liability policy containing such an exclusion does not insure the policyholder against liability to repair or replace his own defective work or product, but it does provide coverage for the insured's liability for damages to other property resulting from the defective condition of the work, even though injury to the work product itself is excluded.

*Volentine*, 578 S.W.2d at 503–04. The rule stated in *Volentine* was applied as a reason for affirming the trial court's granting of summary judgment for the insurer in *Sarabia v. Aetna Casualty & Surety Co.*, 749 S.W.2d 157 (Tex.App.—El Paso 1988, no writ). Exclusions identical to j.(5) and (6) formed a basis for grant of summary judgment for the insurer in a case factually similar to the instant one in *Malone v. Scottsdale Insurance Co.*, 147 F.Supp.2d 623, 628–29 (S.D.Tex.2001).[7]

While there is basis for a reasonable argument that exclusion m. applies, applicability of that exclusion uncertain. Considering the clarity of the other reasons why the claims of the Jeters do not come within the scope of the coverage provided by the policy, the court finds unnecessary a further discussion of the potential applicability of exclusion m.

#### 4. The Court Decisions Upon Which Plaintiff Relies are Not Persuasive

Plaintiff cites in its brief four court decisions for the proposition that "[n]umerous Texas cases have held that allegations of negligent construction are sufficient to trigger coverage." Pl.'s Br. at 8. This is an overstatement as to all four cited cases. The first three, *Federated Mutual Insurance Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720 (5th Cir.1999), *E & R Rubalcava Construction, Inc. v. The Burlington Insurance Co.*, 147 F.Supp.2d 523 (N.D.Tex.2000), and *E & R Rubalcava Construction, Inc. v. The Burlington Insurance Co.*, 148 F.Supp.2d 746 (N.D.Tex. 2001), are readily distinguishable. In each of those cases, the property damage at issue was damage done to property other than the work the insured had contracted to do. In contrast, in the instant action the only damage claimed by the Jeters was to the work plaintiff was to do pursuant to its contract with the Jeters. This distinction was determinative of the outcome of *Grapevine Excavation* and the two *Rubalcava* cases. In *Grapevine Excavation*, the Fifth Circuit explained:

Many of these cases have involved claims for damage caused by an insured's defective performance or faulty workmanship. Furthermore, within this genre, courts have consistently held that

**7.** The Southern District rejected the contention of the insured in *Malone* that the allegations made by the property owner of negligence on the part of the insured in the performance of the construction work brought the underlying claims against the insured within the scope of the insurance coverage, explaining by language that is particularly apropos here, that:

> The ... Petition alleges that Malone "failed to construct the improvements in accordance with the architect's plans and specifications which were ... approved by the City of Conroe." *Id.*, ¶ 14. These failures were omissions which can only be

considered voluntary and intentional, as opposed to accidental .... The fact that the ... Petition alleges "negligent" construction of improvements to real property does not alter this conclusion. *See American States Ins. Co. v. Bailey*, 133 F.3d 363 (5th Cir.1998); *Folsom Investments, Inc. v. American Motorists Ins. Co.*, 26 S.W.3d 556, 559 (Tex.App.—Dallas 2000, n.w.h.) (noting that negligence that is "related to and interdependent on claims of intentional conduct does not constitute an occurrence for insurance coverage purposes").

*Malone*, 147 F.Supp.2d at 627–28 (footnote omitted).

damage wreaked on the work product of a third party—as opposed to that of the insured—is presumed to have been unexpected and, therefore, constitutes an accident or an occurrence.

197 F.3d at 725 (footnotes omitted). Similarly, in the first *Rubalcava* case, Judge Lynn, based on *Grapevine Excavation* and *Cruse,* explained that "property damage to another person's property arising from faulty workmanship of the insured is an 'occurrence' under the applicable policy language." 147 F.Supp.2d at 527.

The fourth case cited, *CU Lloyd's of Texas v. Main Street Homes, Inc.,* 79 S.W.3d 687 (Tex.App.—Austin 2002, no pet.), involved only the duty to defend issue, and is distinguishable from the instant case, as well as others cited, because the alleged property damage did not occur until after the construction was completed, with the consequence that exclusionary language that otherwise might be applicable did not apply. The Texas court recognized that the exclusion "applies to circumstances where the contractor or subcontractors are *currently* working on the project." *Id.* at 696. Nevertheless, the *Main Street Homes* decision is something of an anomaly. Apparently, the allegations in the underlying action made reference only to damage caused by the contractor to the work being performed by the contractor. The Texas court held that the contractor's liability insurer had an obligation to defend the contractor in that action. It appears that the decision was influenced by the fact that the allegations against the contractor in the underlying suit included allegations of negligence. *Id.* at 694. And, the court justified its reliance on the allegations of negligence by citing *Grapevine Excavation. Id.* Thus, the decision seems to have been inspired by a misreading of the Fifth Circuit's perception of Texas law. The Texas court would have been wiser to have heeded the admonition of the Fifth Circuit in *Bailey* that "artful pleading" suggesting that an insured's "acts were negligent or reckless cannot overcome the basic facts underlying [the] claims." *Bailey,* 133 F.3d at 370. The court concludes that, to the extent that *Main Street Homes* is inconsistent with any conclusion the court has reached in the instant case, *Main Street Homes* is not representative of Texas law.

## VI.

### *Plaintiff's Extra–Contractual Claims*

Because of the court's conclusion that there is no insurance coverage for the claims being made by the Jeters against plaintiff, and that defendant has no defense or payment obligation in reference to those claims, the statutory and other extra-contractual claims made by plaintiff against defendant fall by the wayside. Therefore, the court is granting summary judgment for defendant as to all claims asserted by plaintiff against defendant in this action as well as defendant's request for declaratory relief.

## VII.

### *ORDER*

For the reasons stated above,

The court ORDERS that defendant's motion for summary judgment, as amended, be, and is hereby, granted, and that plaintiff's motion for partial summary judgment be, and is hereby, denied.

The court further ORDERS and DE-CLARES that defendant does not have, and has not had, any obligation under policy number 04–GL–000048452, to provide a defense to plaintiff in the arbitration, and will have no obligation under or pursuant to such policy to pay any amount that may be awarded to the Jeters against plaintiff

by reason of any of the claims, facts, or circumstances alleged by the Jeters against plaintiff in the arbitration or out of which the arbitration arose.

The court further ORDERS that plaintiff be, and is hereby, denied any relief against defendant, and that all claims and causes of action asserted by plaintiff against defendant be, and are hereby, dismissed with prejudice.

## FINAL JUDGMENT

Consistent with the memorandum opinion and order signed by the court in the above-captioned action on the date of the signing of this final judgment,

The court ORDERS, ADJUDGES, DECREES, and DECLARES (a) that defendant, Mid–Continent Casualty Company, does not now have, and has not had, any obligation under policy number 04–GL–000048452 it issued to plaintiff, Jim Johnson Homes, Inc., to provide a defense to plaintiff in the arbitration proceeding between Bennie Jeter and Cherry Jeter (the "Jeters") and plaintiff, and (b) that defendant will have no obligation under or pursuant to such policy of insurance to pay any amount that may be awarded to the Jeters against plaintiff by reason of any of the claims, facts, or circumstances alleged by the Jeters against plaintiff in their original or amended demands for mediation and arbitration or out of which the arbitration proceeding arose.

The court further ORDERS, ADJUDGES, and DECREES that plaintiff be, and is hereby, denied any relief against defendant, and that all claims and causes of action asserted by plaintiff against defendant be, and are hereby, dismissed with prejudice.

The court further ORDERS, ADJUDGES, and DECREES that defendant have and recover from plaintiff cost of court incurred by defendant in this action.