In re ML & ASSOCIATES, INC., Debtors.

Amerisure Insurance Company, Plaintiff,

v.

ML & Associates, Inc., City of Highland Village and Hiram "Chip" Johnson, Defendants.

Bankruptcy No. 00–37462–SAF–7.

Adversary No. 03–3442.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Dec. 1, 2003.

David M. Pruessner, Dallas, TX, for Plaintiff, Amerisure Insurance Co.

Edwin P. Voss, Jr., Brown & Hofmeister, Dallas, TX, for Defendant, City of Highland Village, Texas.

Dennis L. Roossien, Jr., Munsch, Hardt, et al., Dallas, TX, for Defendant, Hiram "Chip" Johnson.

Rod L. Poirot, Cavazos, Hendricks and Poirot, Dallas, TX, for Defendant, James W. Cunningham, Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

ML & Associates, Inc. ("MLA"), the debtor, served as the general contractor for the construction of a municipal complex for the City of Highland Village, Texas. After completion of construction, Highland Village filed a complaint against MLA and others, including subcontractors, for physical damage to the building. Amerisure Insurance Company, the plaintiff in this adversary proceeding, issued a commercial general liability policy to MLA. MLA demanded that Amerisure defend MLA from the liability claims brought by Highland Village and otherwise indemnify MLA for any judgment that may be awarded on the city's claims.

On November 21, 2000, MLA filed a petition for relief under Chapter 11 of the Bankruptcy Code. On March 22, 2001, the court converted MLA's bankruptcy case to a case under Chapter 7 of the Code. On March 30, 2001, the United States Trustee appointed James Cunningham as the

Chapter 7 trustee of MLA's bankruptcy estate. By order entered November 26, 2002, the bankruptcy court granted relief from the automatic stay to allow Highland Village to liquidate its claim against MLA and recover from any applicable insurance.

Amerisure filed this adversary proceeding requesting a declaratory judgment that it had no duty to defend nor to indemnify MLA or Hiram "Chip" Johnson, MLA's vice president, on the city's claims. Johnson filed a counter-claim requesting a declaratory judgment that Amerisure does have a duty to defend and indemnify MLA and Johnson on Highland Village's claims. Johnson also counter-claimed for breach of contract, breach of duty of good faith and fair dealing, violation of the Texas Insurance Code and recovery of his attorney's fees. In its answer to the counter-claim, Amerisure asserts that Johnson's individual claims are not ripe for adjudication as Johnson had not been sued by the city nor been subjected to a judgment or settlement concerning the city's claims.

Amerisure moves for summary judgment declaring that the commercial general liability policy does not provide coverage for MLA on the city's claims. Johnson cross-moves for summary judgment declaring that Amerisure's policy provides coverage for MLA and for Johnson on the city's claims. Johnson also cross-moves for partial summary judgment on his breach of contract and duty of good faith and fair dealing claims. The city opposes Amerisure's motion. Cunningham takes no position on the summary judgment motions. The court conducted a hearing on the motions on October 17, 2003.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1122 (5th Cir. 1988). On a summary judgment motion the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A factual dispute bars summary judgment only when the disputed fact is determinative under governing law. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court applies the same standards to the cross-motion for partial summary judgment.

To determine coverage, the insured has the burden to show that a claim against him is potentially within the scope of coverage. "[H]owever, if the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply. Once the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion." *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.,* 197 F.3d 720, 723 (5th Cir.1999).

As required by the construction contract between MLA and Highland Village, MLA obtained a Texas statutory performance

bond from National American Insurance Company ("NAIC") to guarantee MLA's performance on the construction of the municipal complex. Johnson guaranteed the performance bond as a principal of MLA.

In its third amended petition filed in the 211th Judicial District Court of Denton County, Texas, Highland Village alleged claims of breach of contract, breach of warranty and negligence against MLA and its subcontractors, resulting in physical damage to the municipal complex. Highland Village specified the damage to include: "(a) a foundation, including floor slab, that has shifted, heaved and/or sunken; (b) interior and exterior walls that have been severely damaged, both structurally and aesthetically; (c) numerous cracked walls and floors throughout the Municipal Complex; (d) unsatisfactory drainage; (e) water leaks in the roof during periods of rain; and (f) other defects and deficiencies." Third Am. Pet. ¶ 20. The city further alleged that as a result of MLA's breach of contract, breach of warranties and negligence, the city "has lost and will lose the use and enjoyment of the Municipal Complex, both to date and during the period of time for needed repair...." Third Am. Pet. ¶ 24. The city requested damages for repairs and "for the loss of the use and enjoyment of the Municipal Complex during its rehabilitation...." *Id.*

Highland Village asserted a claim in the state court litigation against NAIC under the performance bond. NAIC, in turn, demanded that Johnson indemnify it from the city's claims.

MLA and Johnson submitted a notice of claim to Amerisure, requesting that Amerisure defend and indemnify them under the general liability policy. Amerisure denied coverage and filed this adversary proceeding to determine coverage.

In this adversary proceeding, the court assumes that Highland Village will prove the allegations in its third amended petition in state court. *First Texas Homes, Inc., v. Mid–Continent Cas. Co.*, 2001 WL 238112, at *2, 2001 U.S. Dist. LEXIS 2397, at *6 (N.D.Tex. Mar. 7, 2001). Amerisure contends, in this adversary proceeding, that Highland Village will establish construction performance defects covered by the performance bond. Amerisure's commercial general liability policy insures accidents, not construction performance defects. At the hearing on the summary judgment motions, the parties considered that primarily foundation problems caused the damage to the building. Amerisure argues that physical damage to a building primarily attributable to foundation problems facially implicates construction problems, not tort accidents. Nevertheless, Johnson and the city argue that Fifth Circuit explanation of Texas case law compels a finding of at least a duty to defend the negligence claim.

### Property Damage

■ Amerisure first contends that Highland Village's complaint does not allege "property damage" covered by the Amerisure policy. The policy provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result." Commercial General Liability Coverage Form, Sec. I—Coverages, ¶ A.1.a. Under the policy, "property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property ... or [l]oss of use of tangible property that is not physically injured." Commercial General Liability Coverage Form, Sec. V—Definitions, ¶ 15.

Contrary to Amerisure's argument on summary judgment, Highland Village alleges in the state court litigation that it has lost the use of the building caused by the damage to the building. The policy's definition of property damage covers that allegation. Except as limited below, Amerisure's motion for summary judgment on this ground will be denied; Johnson's cross-motion will be granted.

### Impaired Property Exclusion

■ Amerisure also contends that the "Impaired Property Exclusion" in the policy applies. The policy excludes coverage for "property damage" to "impaired property" "arising out of (1)[a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2)[a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." Commercial General Liability Coverage Form, Section I—Coverages, ¶ 2.m. "Impaired property" means "tangible property, other than 'your product' or 'your work', that cannot be used or is less useful...." Commercial General Liability Coverage Form, Section V—Definitions, ¶ 7. "Your work" means "[w]ork or operations performed by you or on your behalf" and includes materials, parts or equipment furnished in connection with that work and related warranties and representations. Commercial General Liability Coverage Form, Section V—Definitions, ¶ 19.

Highland Village's third amended petition in state court alleges damages to the municipal complex caused by MLA or its subcontractors. MLA and its subcontractors constructed the building. Consequently, the policy's definition of "your work" includes the building. The exclusion applies to property damage to impaired property. But the policy's definition of "impaired property" does not include "your work." Therefore, the building would not be included in the

definition of "impaired property." Accordingly, the exclusion does not apply. Except as limited below, Amerisure's summary judgment motion on this ground will be denied; Johnson's cross-motion will be granted.

### Occurrence/Accident

With that, the court turns to the gravamen of this litigation. The policy covers bodily injury and property damage "only if . . . caused by an 'occurrence' that takes place in the 'coverage territory.'" Commercial General Liability Coverage Form, Section I—Coverages, ¶ 1.b. "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Commercial General Liability Coverage Form, Section V—Definitions, ¶ 12. Amerisure contends that property damage caused primarily by foundation problems must be attributable to the construction of the building, not to an accident at the building. Consequently, the damage would not be covered by the commercial general liability policy. Any other reading would convert a liability policy into a performance policy. *Jim Johnson Homes, Inc. v. Mid–Continent Cas. Co.,* 244 F.Supp.2d 706, 714–15 (N.D.Tex.2003). This approach to the coverage question appears reasonable on an initial review of the policy, but binding court decisions make the analysis more complex.

The Fifth Circuit has explained that there are two lines of Texas cases construing the definition of "occurrence" for the purpose of insurance coverage. "The first pertains to coverage of claims against an insured for damage caused by its alleged intentional torts. According to this body of law, damage that is the natural result of voluntary and intentional acts is deemed not to have been caused by an occurrence, no matter how unexpected, unforeseen, and unintended that damage may be."

*Grapevine Excavation,* 197 F.3d at 723. In cases involving claims against an insured for damage arising out of his alleged negligence, however, a second line of cases has developed. Under the second line of cases, Texas courts "have interpreted the terms 'accident' and 'occurrence' to include damage that is the 'unexpected, unforeseen or undesigned happening or consequence' of an insured's negligent behavior." *Id.* at 724–25.

As the Circuit explained, intentional and negligent types of tortious acts frequently occur in the performance of a contract; the difference lies in the way the insured performs. There is not an "occurrence" when the insured intends his performance to result in damage or when the insured commits an act that is legally deemed to constitute an intentional tort. There is an "occurrence" when an insured intends his performance to be correct, but negligently falls short of the appropriate standard and causes unintentional damage. *Id.* at 729–30.

■■■ Amerisure's "duty to defend is triggered if at least one of several claims in the [city's] complaint *potentially* falls within the scope of coverage, even if other claims do not." *Id.* at 726 (emphasis added). The court applies a liberal interpretation to the factual allegations in the city's complaint. *McKinney Builders II, Ltd. v. Nationwide Mut. Ins. Co.,* No. CIV. A.3:97–CV–3053, 1999 WL 608851, at *3 (N.D.Tex. Aug.11, 1999). In doing so, however, the court focuses on the factual allegations and not on the legal theories alleged. *Id.*

■■ The city alleged that it contracted with Phillips Swager Associates to provide architectural design and supervision services for the project. The city contracted with GME Consulting Services, Inc., to provide soil analysis for the construction site and to test construction materials for the foundation of the building. The city contracted with Jaster–Quintanilla & Associates, Inc., to provide structural engineer services. With these professional services, the city contracted with MLA to be the general contractor, recognizing that MLA could subcontract for site preparation and sub-grade work, foundation and floor slab work, and other work. While alleging that MLA breach its contract and its warranties, the city also alleged that MLA negligently performed and/or negligently supervised its subcontractors. The complaint does not allege that MLA intentionally did not perform as directed by the architect, engineer or specialists. Rather, the complaint alleges that MLA negligently performed. The complaint alleges that the negligent performance caused the damage.

The complaint does not allege that MLA intended not to perform in accordance with the drawings or specifications or that MLA intended to cause damage to the building. Rather, the court infers from the complaint that the city alleges that MLA's negligence in performance caused damage which was undesigned and unexpected. The complaint thus has one claim that is facially within the policy's coverage. The allegations of negligence against MLA potentially state a cause of action covered by the insurance policy.

As a result, Amerisure has a duty to defend MLA and Johnson. *Grapevine Excavation,* 197 F.3d at 726, 729–30; *McKinney Builders,* 1999 WL 608851, at *3; *First Texas Homes,* 2001 WL 238112, at *2, 2001 U.S. Dist. LEXIS 2397, at *6–*7.

Relying on *Jim Johnson Homes,* Amerisure contends that the allegedly faulty work must be attributed to contractual failures, and therefore covered by the performance bond and not covered as an occurrence under the liability policy. The district court held in *Jim Johnson Homes* that pleading negligence could not over-

come the summary judgment evidence the court considered. 244 F.Supp.2d at 716–17. The contractor walked away from and did not complete the construction of the building in the *Jim Johnson Homes* case. Because of deficient and substantial non-performance, the owner sought to rescind the contract. The district court reasoned that the failure to perform could not be characterized as negligence. The district court distinguished the *Grapevine Excavation* facts, but did not employ the Fifth Circuit's analytical application of Texas case law. This court must apply the Fifth Circuit's analytical methodology.

■ Amerisure argues that Johnson is asking the court to give the liability insurance policy the attributes of a contractor's performance bond, guaranteeing to the owner that the contractor will perform the construction agreement between the parties in a workmanlike manner and in accordance with the terms of the contract and its warranties. The court agrees with the proposition that the insurance policy cannot be converted into a performance bond. However, that does not lead to the conclusion that Amerisure does not have a duty to defend. But, as the *Jim Johnson Homes* court recognized, an insurer's duty to defend is distinct and separate from a duty to indemnify. 244 F.Supp.2d at 714. Once the facts are adduced at trial, if the city establishes liability of MLA, it may well be on the basis of its claims for breach of contract and breach of warranties, and not on its claim of negligence. In that circumstance, Amerisure would not have a duty to indemnify, and the city would have to look to the performance bond. For that reason, the courts ascertain the duty to defend, while deferring consideration of the duty to indemnify. *McKinney Builders*, 1999 WL 608851, at *11; *First Texas Homes*, 2001 WL 238112, at *2, 2001 U.S. Dist. LEXIS 2397, at *6–*7.

Amerisure urges the court to read the negligence allegations of the city's complaint in the light of the allegations that MLA and its subcontractors failed to perform under the contract with the city. Any negligent act should thereby be considered related to and interdependent with the contractual claims, precluding coverage under the liability insurance policy. But this argument, too, fails to apply the analytical framework directed by the Fifth Circuit's reading of Texas case law. Liberally applying the factual allegations of the city's complaint, the city has alleged negligent conduct that, if proved, could be an occurrence under the liability policy. That triggers the duty to defend, but the allegation does not necessarily result in a duty to indemnify. The duty to indemnify question must be deferred until the resolution of the city's complaint.

Amerisure argues that even if the complaint potentially alleges an occurrence, the policy does not apply because the damage was to MLA's construction of the building. The policy does not apply to property damage to "your work." Commercial General Liability Coverage Form, Section I—Coverages, ¶2.1. However, "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *Id.* Reading the factual allegations of the city's complaint liberally, the city's complaint alleges that subcontractors performed work on MLA's behalf. For purposes of the duty to defend, the exclusion does not apply.

Except as limited below, Amerisure's summary judgment motion on this ground will be denied; Johnson's cross-motion will be granted.

### Justiciability of Johnson Coverage

■ Amerisure contends that Johnson's request for a declaration that Amerisure has a duty to defend and to indemnify

him is not justiciable. Johnson has not been sued by the city. Johnson's exposure stems from his indemnification agreement with NAIC. The city has not obtained a judgment against NAIC on the performance bond. Amerisure argues that should the city obtain a judgment on the performance bond, NAIC may not demand indemnification from Johnson. Consequently, Amerisure argues that an actual case or controversy does not exist with Johnson.

In his affidavit, filed in this adversary proceeding on September 4, 2003, Johnson avers that the city is suing NAIC under the performance bond for the alleged negligent actions of contractors and subcontractors that constructed the municipal complex. "As a result, because I guaranteed the Bond as a principal of MLA, NAIC is demanding that I indemnify it from the City's claims in the Underlying Lawsuit." Johnson Aff. ¶ 7. Johnson continues, "After NAIC asserted its claims against me, I filed a Notice of Occurrence/Claim (the 'Notice') on or about October 30, 2002 with Amerisure Insurance Company ... requesting that it defend and indemnify me from any liabilities that may arise from the Underlying Lawsuit, including NAIC's claim. I filed the Notice with Amerisure pursuant to the commercial general liability policy it issued to MLA (the 'Insurance Policy')." Johnson Aff. ¶ 8. "In response to the Notice, Amerisure sent me a letter on January 20, 2002 denying my claim under the Insurance Policy." Johnson Aff. ¶ 9.

Amerisure has not provided summary judgment evidence refuting that NAIC has demanded that Johnson indemnify NAIC; that Johnson has requested coverage under the Amerisure policy; and that Amerisure has denied coverage. The court concludes that a case or controversy exists. See *Trinity Indus., Inc. v. Martin,* 963 F.2d 795, 798 (5th Cir.1992) ("a plaintiff must plead an actual or threatened injury that is fairly traceable to the conduct complained of and likely to be redressed by the relief requested.").

But that does not mean that the issue of whether Amerisure has a duty to defend or indemnify Johnson is ripe for adjudication on the cross-motion for summary judgment. As Amerisure correctly observes, the city has not alleged any claim against Johnson. Amerisure's policy makes MLA's "executive officers" and "directors" insureds, "but only with respect to their duties as your officers or directors." Commercial General Liability Coverage Form, Section II—Who Is An Insured, ¶ 1.c. Johnson was a vice president of MLA. He avers that he indemnified NAIC as a "principal" of MLA. But, as recognized by the Amerisure letter attached to Johnson's affidavit, Amerisure questions whether Johnson provided the indemnification in connection with his duties as an officer. The cross-motions do not present summary judgment evidence to resolve whether Johnson is an insured under the Amerisure policy. Thus, while the court finds a case or controversy regarding Johnson, the court considers the instant summary judgment motions to address Amerisure's duty to defend and indemnify MLA, not Johnson.

### Partial Summary Judgment

Based on this analysis, the court concludes that Johnson's motion for summary judgment should be partially granted and Amerisure's motion should be denied. Based on the city's third amended petition, Amerisure has a duty to defend MLA. The motions seeking a declaration of a duty to indemnify MLA must be denied without prejudice. In counter-claims, Johnson asserts that Amerisure has a duty to defend and indemnify Johnson and that Amerisure has breached its contract and its duty of good faith and fair dealing regarding Johnson. Ultimately, Johnson seeks to re-

cover his attorney's fees for this litigation. The duty to defend and the duty to indemnify Johnson cannot be determined on the cross-motions for summary judgment. With the duty to defend and the duty to indemnify Johnson unresolved, partial summary judgment on Johnson's counter-claims is premature and must be denied.

### Order

Based on the foregoing,

**IT IS ORDERED** that Amerisure Insurance Company's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Hiram Johnson's cross-motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Amerisure Insurance Company has a duty to defend ML & Associates, Inc., on count four of the third amended petition filed by the City of Highland Village, Texas, in cause no.2002–30009–211, in the 211th Judicial District Court, Denton County, Texas.

**IT IS FURTHER ORDERED** that the trial docket call scheduled for December 8, 2003, at 1:30 is cancelled. In its place, the court shall hold a status conference on December 8, 2003, at 1:30 p.m. to determine the status of the state court litigation and to consider further scheduling of the remaining issues in this adversary proceeding.