ARCHON INVESTMENTS, INC. d/b/a
GEMS Custom Homes, Appellant,

v.

GREAT AMERICAN LLOYDS INSUR-
ANCE COMPANY and Mid–Continent
Casualty Company, Appellees.

No. 01–03–01299–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 25, 2005.

Rehearing Overruled Sept. 28, 2005.

Lee Howard Shidlofsky, Nickens, Keeton, Lawless, Farrell & Flack, L.L.P., Austin, TX, for Appellant.

Jennifer Bruch Hogan, Hogan & Hogan, L.L.P., John Engvall, J. Jonathan Hlavinka, Engvall & Hlavinka, L.L.P., Richard P. Hogan Jr., Pillsbury Winthrop Shaw Pittman, L.L.P., Houston, TX, for Appellees.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

This is an insurance coverage case decided on cross-motions for summary judgment in which the trial court construed a commercial general liability (CGL) policy in favor of appellees, Great American Lloyds Insurance Company (Great American) and Mid–Continent Casualty Company[1] and against appellant, Archon Investments, Inc. d/b/a GEMS Custom Homes (Archon). In three issues, Archon contends that the trial court erred in rendering summary judgment for Great American because Great American (1) had a duty to defend Archon; (2) had a duty to indemnify Archon; and (3) violated article 21.55 of the Texas Insurance Code.[2] The parties do not dispute the pertinent facts; the issue in this case is whether those facts triggered Great American's duty to defend. Because we conclude Great American has a duty to defend Archon in the underlying litigation, we reverse.

## Factual & Procedural Background

In 1994, Dr. William F. Braden contracted with Archon to build a custom home for him in Baytown, Texas. A few years after the house was built, Braden noticed that wood was rotting around the windows, possibly as a result of leakage from the stucco siding or because some of the windows might have been installed by a subcontractor without the requisite flashing. In 2001, Braden sued Archon and two of its subcontractors, contending that the defendants had used materials that did not meet industry standards and had failed to construct the home in a good and workmanlike manner. Based on these allegations, Braden brought causes of action for breach of the implied warranties of good and workmanlike construction and suitability for habitation, breach of contract, violation of the Deceptive Trade Practices Act (DTPA),[3] violation of chapter 27 of the Property Code,[4] negligence, and negligent

---

1. Although Mid–Continent remains in the style of the case, it is not a party to the appeal.

2. See TEX. INS.CODE ANN. art. 21.55 (Vernon Supp.2004–2005) (governing prompt payment of insurance claims).

3. See TEX. BUS. & COM.CODE ANN. §§ 17.46(b)(2), (5), (6), (7), & (23) (Vernon 2002).

4. TEX. PROP.CODE ANN. § 27.001 (Vernon Supp. 2004–2005) (governing actions to recover damages resulting from construction defect). This cause of action was brought against Archon only.

misrepresentation. Braden sought to recover his actual damages, punitive damages, and attorney's fees.

Great American refused to provide counsel to defend Archon and sought a declaratory judgment from the trial court that it owed no duty to defend or indemnify Archon. The parties filed cross-motions for summary judgment on the coverage issue. The trial court granted Great American's motion and denied Archon's motion, finding that Great American had no duty to defend or indemnify Archon.

### Standard of Review

We follow the usual standard of review for traditional summary judgments rendered under rule 166a(a) and (b) of the Rules of Civil Procedure: The party with the burden of proof must prove it is entitled to judgment by establishing each element of its claim or defense as a matter of law, or by negating an element of a claim or defense of the opposing party as a matter of law. Tex.R. Civ. P. 166a(a), (b). These standards are applicable in insurance-coverage cases. *See e.g., State Farm Fire & Cas. Co. v. Vaughan,* 968 S.W.2d 931, 933 (Tex.1998); *Hanson v. Republic Ins. Co.,* 5 S.W.3d 324, 327 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we may determine all questions presented, including the propriety of overruling the losing party's motion, provided each party has fully met its burden and sought final judgment relief. *CU Lloyd's v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998); *Hanson,* 5 S.W.3d at 327.

### Discussion

In its first and second issues, Archon contends the trial court erred in concluding that Great American had no duty to

defend or indemnify it in the underlying lawsuit and in rendering summary judgment for Great American on that basis. Archon contends that its CGL policy provides coverage for inadvertent construction defects that cause damage after a home has been sold to a buyer when the damages arise from the work of the insured's subcontractors, as alleged in the underlying suit; and therefore Great American has a duty to defend and indemnify it. Great American contends that a suit for construction defects does not constitute an "occurrence" triggering the indemnification provisions of the GCL policy; thus, it has had no duty to defend Archon. The policy provisions and definitions and Braden's pleadings comprise the foundation of our analysis.

### *Policy Terms*

The policy issued to Archon is a standard 1993 broad-form CGL policy. Section I of the policy contains the insuring agreement and the terms of coverage. "Coverage A," providing coverage for "Bodily Injury and Property Damage Liability," addresses the duties to defend and to indemnify. Coverage A provides that the insurer has a duty to defend Archon in any suit seeking damages for "bodily injury" and "property damage" and to indemnify Archon for those sums it becomes legally obligated to pay as damages as follows:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any

"occurrence" and settle any claim or suit that may result. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; . . . . [5]

"Property damage" is defined in relevant part in Section V(15) of the CGL policy as "physical injury to tangible property, including all resulting loss of use of that property." The definition further provides that "loss of use shall be deemed to occur at the time of the physical injury that caused it." An "occurrence" is defined in Section V(12) of the CGL policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Coverage A Section 2(j) provides that certain property damage is excluded from coverage, including property damage to "(5). that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations," and "(6). that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." [6] Section 2(j) then states, "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.' "

Section 2(*l*) of Coverage A excludes coverage for " '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' " But that section too states, "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Section V(14)(a) defines a "[p]roducts-completed operations hazard" as including "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.' "

### Construction of the CGL Policy

▮ Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997); *Hanson*, 5 S.W.3d at 328. When a policy permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex.1992); *Hanson*, 5 S.W.3d at 328. We must strive to effectuate the policy as the written expression of the parties' intent. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). It is well settled that insurance policies should be construed in favor of the insured; however, this rule does not apply when the term to be construed is unambiguous and susceptible of only one construction. *Devoe v. Great Am. Ins.*, 50 S.W.3d 567, 571 (Tex.App.-Austin 2001, no pet.). In such a case, we give the words in the policy their plain meaning. *Id.*

---

5. The parties stipulated to certain facts, the two most pertinent of which are that (1) Braden did not allege any bodily injury or injury to tangible personal property and (2) Braden did allege that his home was physically damaged—he contended that the home was not constructed properly and sought damages for the repair and reconstruction of that physical damage.

6. "Your work" is defined in Section V(17) as (a) "work or operations performed by you or on your behalf" and (b) "material, parts or equipment furnished in connection with such work or operations."

### Duty to Defend

Great American asks us to declare that a claim by a homeowner against a general contractor "for the costs to repair and/or replace the insured general contractor's own defective work" is not an occurrence that triggers either the duty to defend or the duty to indemnify under the CGL policy. Archon replies that it is not claiming that Great American has a duty to defend it against claims for the costs of repairing or replacing its *own* defective work, but rather that Great American has a duty to defend it against claims for losses caused by the negligent work of Archon's subcontractors on Braden's house, which are covered by the policy.

To determine whether an insurer has the duty to defend its insured, Texas courts apply the "eight corners" rule. *See Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Pilgrim Enters., Inc. v. Maryland Cas. Co.,* 24 S.W.3d 488, 493 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Under the "eight corners" rule, we compare the allegations in the live pleadings to the terms of the insurance policy without regard for the truth or falsity of the allegations. *See Pilgrim,* 24 S.W.3d at 493. When determining the insurer's duty to defend, we interpret the allegations liberally in favor of the insured. *Nat'l Union,* 939 S.W.2d at 141; *Collier,* 64 S.W.3d at 62. Any doubt as to whether the insurer has a duty to defend is resolved in favor of the insured. *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 186 (Tex.2002); *Collier,* 64 S.W.3d at 59.

As a general rule, the insurer is obligated to defend if there is, potentially, an action alleged within the policy coverage, even if the allegations do not clearly show there is coverage. *Nat'l Union,* 939 S.W.2d at 141; *Heyden Newport Chem. Corp. v. So. Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965); *Collier,* 64 S.W.3d at 59. It is the underlying facts alleged that determine coverage, rather than the causes of action enumerated. *Nat'l Union,* 939 S.W.2d at 141; *Collier,* 64 S.W.3d at 59; *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 677 (Tex.App.-Houston [14th Dist.] 1993, writ denied). A duty to defend any of the claims requires the insurer to defend the entire suit. *CU Lloyd's of Tex. v. Main St. Homes, Inc.,* 79 S.W.3d 687, 692 (Tex.App.-Austin 2002, no pet.); *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.,* 146 S.W.3d 833, 843 & n. 9 (Tex.App.-Dallas 2004, pet. filed).

An insurer's duty to defend its insured is separate and distinct from its duty to indemnify. *Great Am. Ins. Co. v. Calli Homes,* 236 F.Supp.2d 693, 697 (S.D.Tex.2002). The duty to indemnify is not based on the pleadings in the underlying lawsuit, but on the facts that establish liability. *Id.* at 698. It arises only after the insured has been adjudicated legally responsible for damages in a lawsuit by judgment or settlement. The duty to defend is thus broader than the duty to indemnify; if an insurer has no duty to defend, it has no duty to indemnify; but an insurer may have a duty to defend without being ultimately shown to have a duty to indemnify. *See id.; Collier,* 64 S.W.3d at 59.

### Application of Eight–Corners Rule

Under its plain language, the CGL policy requires Great American to defend Archon in any suit seeking recovery for property damage covered by the policy. Damage to real property on which Archon or its subcontractors are performing operations at the time of the loss and damage due to Archon's own incorrectly performed work are excluded from coverage. However, the policy covers damages arising

out of work performed on Archon's behalf by a subcontractor if the loss occurred on property not then owned by Archon, *i.e.*, if the loss was a "products completed operations hazard." The property damage must be caused by an "occurrence" as defined in the policy.

The insured's standpoint controls in determining whether there has been an "occurrence" that triggers the duty to defend. *King*, 85 S.W.3d at 188. The CGL policy defines an "occurrence" as an "accident," but it does not further define the word accident. An injury is "accidental" from the point of view of the insured if "it is not the natural consequence of the action or occurrence which produced the injury; or, in other words, if the injury could not reasonably be anticipated by [the] insured, or would not ordinarily follow from the action or occurrence which caused the injury." *Hartrick v. Great Am. Lloyd's Ins. Co.*, 62 S.W.3d 270, 276 (Tex. App.-Houston [1st Dist] 2001, no pet.). "The actor's intent is not imputed to the insured in determining whether there has been an occurrence." *King*, 85 S.W.3d at 191–92.

In the common law, the definition of an accident in the context of an insurance policy has been held to include "negligent acts of the insured causing damage which is undesigned and unexpected." *Trinity Universal Ins.*, 945 S.W.2d at 827–28 (citing *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400 (Tex.1967)); *Hartrick*, 62 S.W.3d at 276("Texas courts have long construed the term 'accident' to encompass negligently caused losses."); *Westchester Fire Ins. Co. v. Gulf Coast Rod, Reel & Gun Club*, 64 S.W.3d 609, 613 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (allegations of negligence satisfy "occurrence" requirement in duty to defend context). If intentionally performed acts are not in-

tended to cause harm, but do so because of negligent performance, a duty to defend arises. *See Main St. Homes*, 79 S.W.3d at 693 (if there was nothing in underlying petition to indicate that builder intentionally constructed foundations to fail, insurer had duty to defend general contractor against homeowners' suits to recover for property damage from inadequate foundation design); *accord Gehan Homes*, 146 S.W.3d at 843 & n. 9; *see also Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 730 (5th Cir.1999); *Calli Homes*, 236 F.Supp.2d at 700; *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders*, 215 F.Supp.2d 783, 790 n. 2 (E.D.Tex.2002) (focus should not have been on whether damage should have been expected when builder performed its duties negligently, but on intended or expected results when it performed those duties non-negligently).

Here, Braden seeks to recover for damage to the property he bought from Archon that was allegedly caused by work done on Archon's behalf by a subcontractor, *i.e.*, he seeks to recover for damage to his property allegedly caused by leakage from the siding or by incorrectly installed windows. Because Archon could not have intended that the negligent work of its subcontractors cause physical damage to Braden's home, damage to Braden's property due to the negligence of Archon's subcontractors falls within the scope of an occurrence under the language of the CGL policy as such language has consistently been interpreted by the Texas courts.

Great American, however, asks us to find that, under the "economic loss" doctrine, Archon can be held liable in the underlying suit only for economic loss to the subject of Archon's contract with Braden; that it has no duty to indemnify Archon for economic loss to the subject of Archon's contract; thus, it has no duty to

defend Archon. In making this argument, Great American relies principally on a recent federal case, *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 335 F.Supp.2d 754, 758–59 (W.D.Tex.2004), citing it as authority for four propositions: "(1) the nature of the injury determines whether a tort or contract duty is breached under Texas law; (2) when the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone; (3) something other than pure economic loss must be proved to trigger coverage under a commercial general liability insurance policy; and (4) in Texas, the purpose of comprehensive liability insurance coverage is to protect the insured from liability resulting from property damage or bodily injury caused by the insured's product, but not the replacement or repair of that product." *Lamar Homes*, relies in turn on *Jim Walter Homes v. Reed*, 711 S.W.2d 617 (Tex.1986), which holds that "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* at 618. We turn, therefore, to *Jim Walter Homes*.

*Jim Walter Homes* was a suit for damages arising out of the sale and construction of a house. 711 S.W.2d at 617. The jury found that Jim Walter Homes had breached the warranty of good workmanship and had been grossly negligent in supervising construction of the house, and it awarded the plaintiff homebuyers both actual and exemplary damages. *Id.* The issue on appeal to the supreme court was whether the gross negligence found by the jury was an independent tort that would support the award of exemplary damages. *See id.* at 617–18. The supreme court held that it was not; rather, the plaintiffs' injuries sounded only in contract in that the house they were promised and paid for was not the house they received. *Id.* at 618. Thus they had lost only the benefit of their bargain, and punitive damages

were not recoverable. *Id.* Significantly, the supreme court acknowledged that "[t]he contractual relationship of the parties may create duties under both contract and tort law" and that "[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both." 711 S.W.2d at 618.

The case before us concerns an insurance company's duty to defend its insured on the pleadings under the terms of the insurance policy, not the correctness of assessing punitive damages in an adjudicated case. Braden has pleaded not only that Archon was negligent, breached the warranties of good workmanship, construction and suitability, made negligent misrepresentations, and violated the DTPA, but also that Archon's subcontractors were negligent and caused damage to the house Braden bought. Application of the economic loss doctrine of *Jim Walter Homes* would require us to extend the economic loss doctrine beyond the area of exemplary damages in an adjudicated case into the area of an insurance company's duty to defend on the pleadings (as the federal court did in *Lamar Homes*) and to subsume under Braden's breach of warranty claims both the torts that Braden has alleged Archon committed and the alleged torts of Archon's subcontractors, while ignoring the character of those claims. We decline to extend *Jim Walter Homes* as Great American requests.

■ We cannot ignore the pleadings and the language of the CGL policy in assessing Great American's duty to defend. Although property damage to Archon's work is excluded from coverage under the terms of the policy, that exclusion does not apply if the damage to property occurred after the house was completed and sold if the work out of which the damage arose was performed on Archon's

behalf by a subcontractor. As the Dallas Court of Appeals noted in *Gehan:*

> Since the decision of whether there is a duty to defend is based exclusively on the pleadings and the language of the policy, we cannot read language into the policy that simply is not there. Such an interpretation would render as surplusage the language in the exclusions that applies to property damage.

146 S.W.3d at 843; *see also King,* 85 S.W.3d at 192–93 (noting that insurer's construction of "occurrence," ignoring point of view of insured, would impermissibly render exclusion for intended injury mere surplusage; "our duty is to give effect to all contract provisions and render none of them meaningless").[7] Nor can we make a legal determination as to the merits of Braden's claims on the basis of his pleadings alone. As the *Gehan* court noted:

> [T]exas courts will not look beyond the pleadings and determine facts when the issue is duty to defend, as opposed to duty to indemnify. There is a vast difference between a court analyzing pleadings to determine whether there is a claimed "occurrence" on the face of the pleadings and a court conducting an evaluation of the merits of the underlying claim. .... If we were to hold that there is no duty to defend, we would be doing precisely what Texas courts have long held we cannot do—evaluate the merits of the claim and ignore the facts alleged. Instead, we must liberally interpret the pleadings to determine whether an occurrence is potentially claimed.

*Id.*

▇▇▇ Applying the eight-corners rule and liberally construing both the pleadings and Archon's CGL policy, we conclude, based on a plain reading of the entire policy, including the subcontractor exception, that Braden's pleadings allege a claim potentially within the scope of coverage of the CGL policy. Because facts supporting both intentional and unintentional wrongful acts have been pleaded, Great American has a duty to defend Archon in the underlying suit.[8]

---

7. The federal District Court for the Northern District of Texas reached the same conclusion in an unpublished opinion. *First Tex. Homes v. Mid–Continent Cas. Co.,* No. 3–00–CV–1048–BD, 2001 WL 238112 (N.D.Tex. Mar.7, 2001) (unpublished opinion) (allegation that "home was ... not of proper quality and not designed or constructed in a good and workmanlike manner" and that foundation "was insufficient and resulted in a foundation and home that were not properly designed or built" was sufficient to allege "occurrence" for purpose of duty to defend). Likewise, while this case was pending, the Texas Court of Appeals for the Fourteenth District, in a memorandum opinion, rejected Great American's contention that the economic loss doctrine precluded its liability for defective construction on grounds similar those in this opinion. *See Lennar Corp. v. Great American Ins. Co.,* No. 14–02–00860–CV, 2005 WL 1324833 at *7–*8 (Tex.App.-Houston [14th Dist.] June 5, 2005, no pet.).

8. Great American also relies on *Jim Johnson Homes, Inc. v. Mid–Continent Cas. Co.,* which held that claims for indemnity for negligent design, construction, and supervision of employees and subcontractors made in the context of claims of *intentional misconduct* and *arising during course of construction* were not claims for accidental damage to property and that artful pleading could not overcome the basic facts underlying the plaintiff's breach of contract and fraud claims; thus there was no occurrence and no duty to defend. 244 F.Supp.2d 706, 715–17 (N.D.Tex.2003). Because Braden's claims against Archon, as alleged in Braden's pleadings, do not arise from Archon's intentional misconduct during the course of construction, but rather from property damage suffered by the homeowner after construction was completed that was allegedly caused by Archon's own actions or by Archon's subcontractors, different provisions of the CGL policy are implicated, and *Jim Johnson Homes* does not apply.

Whether Great American also has a duty to *indemnify* Archon is a separate question whose answer depends on the facts to be developed at trial. Specifically, before Great American's duty to indemnify Archon can be assessed, the jury must determine whether Braden's losses—hence Archon's liability—arise out of work negligently performed by Archon itself, out of Archon's intentional acts, or out of the negligence of its subcontractors. The cause of the loss as determined at trial will determine whether the loss is covered by the policy or not. *See Main St. Homes,* 79 S.W.3d at 694–95; *Calli Homes,* 236 F.Supp.2d 693, 700 (S.D.Tex.2002).

Great American contends, however, that this Court's opinion in *Hartrick v. Great American* supports the conclusion that an insurer has no duty to indemnify, and thus, can have no duty to defend a cause alleging breach of the warranties of good and workmanlike construction and suitability for habitation, even when the pleadings allege facts potentially supporting a cause of action for which coverage is provided by a CGL policy. Great American reasons that because such claims are essentially claims to recover for breach of contract, the claims are subject to the economic loss doctrine. We disagree with this characterization of *Hartrick* and with the contention that *Hartrick* governs Great American's duty to defend.

*Hartrick* is not a duty-to-defend case; it is a duty-to-indemnify case. In *Hartrick,* homeowners sued their builder and its subcontractor for negligence, violation of the DTPA, and breach of the implied warranties of good and workmanlike construction and suitability for habitation in connection with structural problems and defects in the foundation of the house. 62

S.W.3d at 272–73. In contrast to this case, the builder's insurer—also Great American—honored its duty to defend. A jury found that Claremont, the builder, had breached the implied warranties of good and workmanlike construction and suitability, but that neither Claremont nor its subcontractor was negligent, nor was Claremont liable under the DTPA. *Id.*

In the homeowners' suit against Great American to recover on the judgment, this Court held that Claremont's conduct was not an "accident" for purposes of coverage under its CGL policy; rather, Claremont *voluntarily and intentionally* failed to comply with the implied promises imposed on it as a matter of law as a homebuilder by not preparing the soil properly and not constructing the foundation properly. Thus, the duty to indemnify was not triggered. We opined, "Although Claremont denied any intent to cause the consequences of not complying with its implied warranties, the jury's responses to the charge in the underlying case, and the resulting verdict and judgment in that case, established that Claremont did not comply with them." *Id.* at 277–78. The determinations that neither Claremont nor its subcontractor was negligent and that Claremont intended the consequences of its breach of warranty could not have been made from the pleadings alone; hence Great American's duty to defend was triggered even though, given the jury verdict and judgment, it ultimately had no duty to indemnify.[9] Far from supporting Great American's contention that it has no duty either to defend or to indemnify Archon, *Hartrick* illustrates the difference between the duty to defend and the duty to indemnify.

**9.** *See also Main St. Homes,* 79 S.W.3d at 694–95 (likewise rejecting application of *Hartrick* to the duty to defend).

### Conclusion

We hold that Great American has a duty to defend Archon in the underlying suit and that the trial court erred in rendering summary judgment for Great American. Whether Great American also has a duty to indemnify Archon is a separate matter we do not reach today; thus, we decline to address Archon's remaining issues.

We reverse the judgment of the trial court and remand the cause for further proceedings in accordance with this opinion.