COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-335-CV

 

 

GRIMES CONSTRUCTION, INC.                                              APPELLANT

 

                                                   V.

 

GREAT
AMERICAN LLOYDS 

INSURANCE COMPANY                                                           APPELLEE

 

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This case arises out of a previous dispute
between Owen and Karen Cox and Appellant Grimes Construction, Inc. regarding
alleged defects in the home that Appellant constructed for the Coxes.  Appellant=s
insurer, Appellee Great American Lloyds Insurance Company, denied that it owed
a duty to defend or a duty to indemnify Appellant in the suit or resulting
arbitration, and this case ensued.  The
trial court granted Appellee=s motion
for summary judgment and denied Appellant=s motion
for partial summary judgment.  Because we
hold that Appellee did not owe a duty to defend or a duty to indemnify Appellant
and did not violate Article 21.55 of the Texas Insurance Code, we affirm the
trial court=s judgment.

I.  Factual
and Procedural Background








Appellant contracted to construct a house for the
Coxes in November 1998.  Appellee issued
a commercial general liability (CGL) policy to Appellant for the construction
of the house.  Appellant finished working
on the house in December 1999 or January 2000. 
In March 2000, Appellant sued the Coxes, seeking payment under the terms
of the contract.  The Coxes filed a
counterclaim, seeking damages for faulty construction of the residence, failure
to complete the residence timely, false representations, and failure to
construct the residence in a good and workmanlike manner.  Additionally, the Coxes included causes of
action for breach of contract, breach of express and implied warranties, fraud,
misrepresentation, and negligent misrepresentation.  The case proceeded to arbitration, and the
Coxes, in their demand for arbitration, continued to allege that Appellant had
failed to complete the residence timely, made false representations, and failed
to construct the residence in a good and workmanlike manner.  They also asserted claims for breach of
express and implied warranties, negligence, negligent hiring and supervision,
fraud, misrepresentation, negligent misrepresentation, violations of the Texas
Deceptive Trade Practices Act (DTPA),[1]
and breach of contract and requested attorney=s
fees.  The case settled before the
arbitration proceeding was adjudicated. 
Pursuant to the settlement agreement, Appellant paid the Coxes
$52,653.51.

In response to the Cox suit, Appellant filed a
claim with Appellee to defend and indemnify it. 
Appellee denied coverage of the claim and denied its duty to defend or
indemnify Appellant.  Appellee filed a
declaratory judgment action seeking a declaration that it did not owe a duty to
pay for the defense of or to indemnify Appellant in the Cox suit and related
arbitration.  Appellant counterclaimed,
seeking a declaration that Appellee did owe a duty to defend and indemnify it
and alleging that Appellee had breached a duty of good faith and fair dealing
and had violated the Texas Insurance Code. 
Both parties filed motions for summary judgment.  The trial court issued a final judgment
granting Appellee=s motion and denying Appellant=s
motion.








In three issues, Appellant argues that the trial
court erred by granting Appellee=s motion
for summary judgment and denying Appellant=s motion
for summary judgment regarding 1) the duty to defend, 2) the duty to indemnify,
and 3) Article 21.55 of the Texas Insurance Code.  We disagree.

II. 
Standard of Review

In a summary judgment case, the issue on appeal
is whether the movant met its summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.[2]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[3]  Therefore, we must view the evidence and its
reasonable inferences in the light most favorable to the nonmovant.[4]








In deciding whether there is a material fact
issue precluding summary judgment, all conflicts in the evidence are
disregarded and the evidence favorable to the nonmovant is accepted as true.[5]  Evidence that favors the movant's position will
not be considered unless it is uncontroverted.[6]

The summary judgment will be affirmed only if the
record establishes that the movant has conclusively proved all essential
elements of the movant's defense as a matter of law.[7]

When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.[8]  The reviewing court should render the
judgment that the trial court should have rendered.[9]

 

 

 

 








III.  Legal
Analysis

A.  Duty to
Defend








The duty to defend is determined by the
allegations in the underlying pleadings and the language of the insurance
policy.[10]  This standard is referred to as the Aeight
corners@ rule.[11]  When we apply the Aeight
corners@ rule,
we give the allegations in the pleadings a liberal interpretation in favor of
the insured.[12]  In other words, Ain a
case of doubt as to whether or not the allegations of a complaint against the
insured state a cause of action within the coverage of a liability policy
sufficient to compel the insurer to defend the action, such doubt will be
resolved in the insured=s favor.@[13]  The facts alleged in the pleadings against
the insured are presumed to be true when gauging the insurer=s duty
to defend.[14]  However, the court may not read facts into
the pleadings, look outside the pleadings, or Aimagine
factual scenarios which might trigger coverage.@[15]  A liability policy obligates the insurer to
defend the insured against any claim that could potentially be covered,
regardless of the claim=s merits.[16]  A duty to defend any of the claims against an
insured requires the insurer to defend the entire suit.[17]

In its first issue, Appellant asserts that the
trial court erred in granting Appellee=s motion
for summary judgment and denying Appellant=s motion
for summary judgment with respect to the duty to defend.  Specifically, Appellant argues that a CGL
policy covers inadvertent defects, that the Aoccurrence@ and Aproperty
damage@
definitions have been satisfied, and that there are no exclusions applicable to
bar coverage.  We disagree that the alleged
damage to the Coxes= house was the result of an Aoccurrence.@

1. Occurrence








The insurance policy obligates Appellee to defend
and indemnify Appellant for all claims of Aproperty
damage@ caused
by an Aoccurrence.@  AOccurrence@ is
defined as Aan accident, including
continuous or repeated exposure to substantially the same general harmful
conditions.@ 
The policy does not define Aaccident.@








Interpretation of insurance policies is governed
by the rules of contract interpretation.[18]  The words in an insurance policy are given
their ordinary meaning unless the policy clearly gives them a different
meaning.[19]  In addition, the Texas Supreme Court has held
that the term accident included Anegligent
acts of the insured causing damage which is undesigned and unexpected.@[20]  More recently, the Texas Supreme Court in Mid-Century
Insurance Co. of Texas v. Lindsey held that two factors are to be
considered in determining whether an act or omission constitutes an accident:
(i) whether the actor intended to cause damage to others and (ii) the
reasonably foreseeable effect of the actor=s
intended conduct.[21]  With regard to the first factor, effects that
the actor did not intend to produce and that he cannot be charged with the
design of producing are produced by accidental means.[22]  On the other hand, intentional actions are
generally not accidental and, thus, are not occurrences.[23]  With regard to the second factor, effects
that are anticipated or foreseeable are generally not accidental.[24]  As stated, both factors play a role in the
determination.[25]

Here, the demand for arbitration constitutes the Apetition@ to
which the court is required to look to determine if the allegations against the
insured were covered by the policy.[26]  The Coxes= demand
for arbitration contains allegations of breach of express and implied
warranties, negligence, negligent hiring and supervision, fraud, misrepresentation,
negligent misrepresentation, violations of the DTPA, and breach of contract.

a. 
Negligence













The Coxes claimed that Appellant was negligent in
constructing their home.  The purported facts
that give rise to the alleged actionable conduct, not the legal theories,
control in determining the duty to defend.[27]  Thus, several courts have held that even when
the petition asserts theories of negligence, if the factual allegations
contained in the petition are based on other claims, such as the contractor=s
failure to construct the building in accordance with the contract and implied
warranties, no occurrence is alleged.[28]  For example, in Jim Johnson Homes, the
court held that artful pleading suggesting that acts were negligent could not
overcome the basic facts underlying the claims.[29]  AThe
allegation that [the insurer] was negligent [was] simply an embellishment on,
and a recharacterization of, the basic breach of contract and fraud claims.@[30]  Likewise, the court in Lamar Homes
held that there was no occurrence Ain spite
of broad negligence allegations@ because
Athe
gravamen of the complaint [was] breach of warranty:  [the contractor] did not build the . . . home
in the fashion and to the standard to which [the contractor] represented . . .
that it would.@[31]  In other words, A[t]he
use of legal legerdemain or mere characterization of an act as negligence does
not overcome the basic facts underlying the claims and thus compel coverage.@[32]  Other courts have similarly denied coverage
by concluding that allegations of faulty workmanship are simply not accidents
or occurrences.[33]








On the other hand, different courts addressing
this issue have concluded that allegations of negligence or defective
workmanship do constitute an occurrence.[34]  For example, in Gehan Homes v. Employers
Mutual Casualty Co., the Dallas Court of Appeals held that negligence in
failing to obtain an accurate soil analysis upon which to base a foundation
design constituted an occurrence.[35]  The court also noted that A[t]here
is a vast difference between a court analyzing pleadings to determine whether
there is a claimed >occurrence= on the
face of the pleadings and a court conducting an evaluation of the merits of the
underlying claim.@[36]  The court stated that deciding that the
negligence claims have no merit because they are simply a recast of the
contract allegations would be inappropriately evaluating the merits of the
claim.[37]  We disagree.








Here, the Coxes=
negligence claim contains allegations that appear, from the face of the demand
for arbitration, to stem from the contractual and warranty obligations owed by
Appellant to the Coxes.  The majority of
the assertions specifically refer to the contract, or Athe
plan,@ and the
others appear to be extensions of breach of warranty claims.  Although the Coxes= demand
for arbitration contains more than just conclusory allegations of negligence,[38]
the supporting facts advance a conclusion that the alleged negligence is merely
an extension of other claims.  Thus, even
though we construe such allegations in favor of the insured, we hold that the
Coxes=
negligence allegation is simply a recharacterization of their basic breach of
contract and warranty claims, which are the gravamen of the complaint.  The Coxes entered into a contract for
Appellant to construct their house, and Appellant did not construct the house
as the Coxes expected and desired.  In
other words, the Coxes= injury was that Athe
house they were promised and paid for was not the house they received.@[39]








The Fifth Circuit=s Federated
Mutual Insurance Co. v. Grapevine Excavation  is among the line of cases holding that
allegations of damage caused by faulty workmanship do constitute an occurrence.[40]  In that case, a subcontractor alleged that
its CGL carriers had a duty to defend it when the general contractor sued it
for damaging another subcontractor=s work.[41]  That court noted that the property damage was
Adamage
done to property other than the work the insured had contracted to do.@[42]  The Jim Johnson Homes court and the Tealwood
Construction, Inc. v. Scottsdale Insurance Co. court found this distinction
important.[43]  In Jim Johnson Homes, which involved
facts and allegations similar to the case at hand, the court stated that Grapevine
and similar cases were Areadily
distinguishable@ because

the property damage at
issue was damage done to property other than the work the insured had
contracted to do.  In contrast, in the
instant action the only damage claimed by the [homeowners] was to the work
plaintiff was to do pursuant to its contract with [the homeowners].  This distinction was determinative of the
outcome of [Grapevine] and the [other] cases.[44]

 








We agree. 
Although the court in Mid-Continent Cas. Co. v. JHP Development, Inc.
believed that attempting to distinguish Grapevine on this basis was
unfounded,[45]
the Grapevine court itself stated that Acourts
have consistently held that damage wreaked on the work product of a third partyCas
opposed to that of the insuredCis
presumed to have been unexpected and therefore, constitutes an occurrence.@[46]  We agree with Jim Johnson that Grapevine
is distinguishable.  Grapevine does
not apply here because the only damage was to work that Appellant, the insured,
contracted to perform.








Although Appellant cites this court=s Mid-United
Contractors, Inc. v. Providence Lloyds Insurance Co. as precedential, that
case is distinct from the case at hand.[47]  In that case, the underlying pleadings
alleged several causes of action, including negligence, and this court held
that the insurer did have a duty to defend the contractor.[48]  However, this holding was based onCand this
court=s
discussion revolved aroundCthe
inapplicability of a policy exclusion.[49]  Whether there was even an occurrence to begin
with was not addressed or discussed, and the issue does not appear to have been
before the court.[50]  Moreover, the majority of the cases cited
above, including Texas Supreme Court cases refining the meaning of an accident
in the context of the definition of an occurrence, postdate the Mid-United case.  Therefore, we conclude that Mid-United is
not binding precedent upon this case.

In addition, in construing the plain meaning of
the terms, we are not prepared to hold that negligence alleged to have occurred
throughout the majority of the term of the contract causing foundation-related
problems that the Coxes described as taking place Aover an
extended period of time@ is an occurrence.  A Areasonably
foreseeable effect@ of not complying with the
construction plan and, instead, negligently performing construction duties is
that the resulting home will suffer damages such as those alleged.  Because the damages were reasonably foreseeable,[51]
the alleged acts do not qualify as an unexpected occurrence.  To hold otherwise, considering the facts of
this case, would inappropriately broaden the scope of coverage of the CGL
policy.

 

 








b. 
Negligent Hiring and Supervision

The Coxes also asserted claims of negligent
hiring and negligent supervision of Appellant=s
subcontractors, alleging that the negligence of one or more subcontractors
caused some of the damages.  In support
of this allegation, in other portions of the demand for arbitration, the Coxes
asserted that Appellant Afailed to obtain a firm bid from
and employ the services of a reputable subcontractor for the sub-contract
associated with the foundation.@  Also, the Coxes alleged that Appellant Anegligently
failed to provide the foundation plan addendum to the pier drilling
subcontractor, causing the foundation to be constructed in a manner that did
not comply with the plan.@ 
They alleged that Appellant=s
subcontractor Anegligently installed foundation
piers@ and
that Appellant Anegligently failed to coordinate
and supervise the work of its subcontractors and failed to ensure that the work
was performed in accordance with building codes, construction standards, and
[the Coxes=] specifications.@








In King v. Dallas Fire Insurance Co., the
Texas Supreme Court held that negligent hiring, training, and supervision
constituted an occurrence under a CGL policy.[52]  In that case, a third party sued a
construction company for injuries he received when one of the construction
company=s
employees attacked him.[53]  The plaintiff alleged several causes of
action, including negligent hiring, training, and supervision of the employee.[54]  The insurer refused to defend the
construction company, and the construction company brought a declaratory
judgment action, asking the trial court to declare that the insurer owed it a
duty to defend it in the underlying suit.[55]  The trial court concluded that there was no
duty to defend, and the court of appeals affirmed.[56]  The Texas Supreme Court reversed, holding
that there was a duty to defend because negligent hiring, training, and
supervision constituted an occurrence although the injury was directly caused
by the employee.[57]








Appellee argues that King is
distinguishable on the ground that the employee=s attack
was intentional and outside of the course and scope of employment.  We agree. 
Like the policy in our case, the King policy contained a
separation of insureds provision and an exclusionary provision that indicated
that whether an occurrence was an accident depended on the standpoint of the
insured, not the employee.[58]  We believe that the facts of King were
sufficient to pass the Lindsey two-pronged test for accident because
there was no intent by the employer to cause damage and the effect of the actor=s
intended conduct was not foreseeable.[59]  Clearly, in hiring and supervising its
employees, the insured in King did not intend to cause damage to
others.  In addition, under general
principles of tort law, an employee=s
intentional tort, such as that committed by the King employee, is
generally considered outside of the scope of employment.[60]  Thus, from the standpoint of the insured in King,
in hiring and supervising its employees, it was not foreseeable to the insured
that they would commit intentional torts or crimes.








But we believe that a subcontractor=s
actions performed in furtherance of its contractual duties are more foreseeable
than torts generally considered outside of the course and scope of
employment.  In the present case, the
Coxes did not allege that the subcontractor committed an intentional tort or
crime but rather that it was negligent. 
Like the contractor in King, Appellant did not intend its
subcontractors= behavior.  That is, Appellant did not intend for its
subcontractors to perform negligently. 
However, we believe that a reasonably foreseeable result of any
negligence in Appellant=s hiring and supervision of its
subcontractor is that the subcontractor could perform negligently and produce a
defective work product.  Thus, the facts
of this case are distinguishable from those in King, and we hold that
the negligent hiring and supervision alleged by the Coxes was insufficient to
qualify as an occurrence and therefore insufficient to trigger a duty to
defend.








In Archon Invs. Homes Inc. v. Great Lloyds
Insurance  Co., the First District
Court of Appeals in Houston distinguished situations in which the work
was done by a subcontractor rather than the contractor itself in analyzing
whether negligence in general could be an occurrence, holding that the
contractor could not have intended or expected negligent work of its
subcontractors that would cause physical damage.[61]  In Archon Homes, the homeowner
sought to recover damages caused by work done on the contractor=s behalf
by a subcontractor.[62]  The court held that because the contractor
could not have intended that the negligent work of its subcontractors cause
physical damage to the homeowner=s
property, there was an occurrence.[63]








Even if we were to agree with this rationale,
which we do not, the factual contentions alleged in this case distinguish it
from Archon=s reasoning.  The Coxes=
allegations of negligence assert ten instances of negligent conduct, and only
one directly charges the subcontractor itself with negligent actions.  The remainder of the allegations refer to the
Appellant=s allegedly negligent actions.
Thus, the essence of the cause of action stems from the actions of Appellant
itself rather than its subcontractor, which, as discussed in detail above, we
believe are foreseeable.  The one
remaining allegation asserts that the subcontractor negligently installed foundation
piers, and that Appellant is vicariously liable for this.  Aside from the vicarious liability issue,
discussed below, we agree that Appellant may not have intended for the
subcontractor to negligently install the piers.[64]  However, we also believe, as emphasized
above, that a reasonably foreseeable result of any negligence in Appellant=s hiring
and supervision of its subcontractor is that the subcontractor could perform
negligently and produce a defective work product.  Thus, the second Lindsey factor weighs
against finding that an accident occurred.[65]  Unlike this court, the Archon court
was not faced with allegations of the general contractor=s
negligent hiring or supervising of its negligent subcontractor, but rather
allegations of general negligence.[66]

Consequently, we hold that allegations of
negligent hiring and supervision  in this
case do not constitute an occurrence. 

c. 
Vicarious Liability








As noted above, one of the Coxes=
allegations of negligence asserts that the subcontractor negligently installed
foundation piers and that Appellant is vicariously liable for this
negligence.  Under Texas law, an
employer, such as a contractor, is generally not vicariously liable for the
negligence of its subcontractor.[67]  However, it may be liable for the negligence
of its subcontractor if it retains the right or power to control the manner in
which the subcontractor performs its work but fails to exercise reasonable care
in supervising the contractor.[68]  

In King, the original plaintiff had also
asserted a claim of respondent superior, but that issue was not before
the Texas Supreme Court.[69]
 Although the Jim Johnson court
did not discuss vicarious liability as a separate issue, vicarious liability
for a subcontractor=s actions was one of the claims
alleged against the contractor.[70]  When the facts alleged against the contractor
did not constitute an occurrence, 
allegations of vicarious liability did not change the court=s
analysis.[71]








Similarly, in our case, the insurance policy
provides that Appellant is the Anamed
insured.@  The policy contains a separation of insureds
provision, providing that the insurance applies as if each named insured were
the only named insured.  Appellant
appears to be the only named insured, and we are to view whether an occurrence
is an accident is based on the standpoint of the insured.[72]  Thus, we believe that whether the general contractor=s
insurance company owes the general contractor a duty to defend based on
allegations of vicarious liability for its subcontractor still depends on
whether there was an occurrence from the standpoint of the general
contractor.  As discussed above with
regard to the negligent hiring and supervision claim, we believe that the
subcontractor=s negligence in this case,
viewed from the standpoint of Appellant, is not sufficient to constitute an
occurrence. 

d. Fraud, Misrepresentation, and Negligent
Misrepresentation








The Coxes= demand
for arbitration also contained allegations of fraud, misrepresentation, and
negligent misrepresentation.  As stated,
the definition of occurrence in our policy is an accident, including exposure
to harmful Aconditions.@  Applying the plain meaning doctrine to a
similar definition, this court has previously held in State Farm Lloyds v.
Kessler that Amisrepresentations and failures
to disclose are not >conditions= that a
person or property can be >exposed= to
under the policies.@[73]  Similarly, the court in Houston Petroleum
Co. v. Highlands Insurance Co. held that exposure to fraudulent promises,
false representations, and untrue statements did not, as a matter of law, fall
within the plain meaning of the definition of occurrence.[74]  The court stated that A[t]o
hold otherwise would require us to unnaturally extend the definition of the
term >conditions.=@[75]  Therefore, we hold that the allegations of
fraud and misrepresentation do not allege an occurrence.

Just as courts are divided on the issue of whether
negligence in general is an accident, courts are similarly split on the
question of whether negligent misrepresentation constitutes an accident.[76]  Although Kessler involved intentional
misrepresentation, under the plain meaning doctrine and our holding above that
the negligence alleged in this case does not constitute an occurrence, the Kessler
rationale would apply equally to claims of negligent misrepresentation, especially
in light of our discussion of negligence in general.  Consequently, we also hold that the
allegation of negligent misrepresentation does not raise an occurrence.

 

 








e.  Breach
of Express and Implied Warranties and Breach of Contract

The Coxes= demand
fo r arbitration also alleges that Appellant breached express and implied
warranties.  Lack of compliance with
warranties has been held not accidental, but the result of the insured=s not
doing what it was required to do.[77]  By not doing what it is required to do under
its contract, an insured can reasonably anticipate the injury that will result.[78]  The same reasoning applies to breach of
contract, because by not complying with contractual obligations, an insured can
reasonably anticipate that injury will result. 
Thus, the allegations of breach of express and implied warranties and
breach of contract are not accidents; consequently, they are not occurrences.

f. 
DTPA Violations








The Coxes= demand
for arbitration also alleges that Appellant violated the DTPA because it made
false representations, breached express and implied warranties, and engaged in
an unconscionable action or course of action. 
The reasoning provided in support of our conclusion that the above
allegations are not occurrences applies to these similar DTPA allegations as
well.  In addition, the Coxes alleged
that Appellant had Aactual awareness of the falsity,
deception, or unfairness of its acts and practices and acted with a specific
intent that [the Coxes] act in detrimental reliance@ on
them.  By the very language of the
petition, these actions were not accidentalCthey are
not Aeffects
that the insured did not intend to produce@ or
effects that the insured Acannot be charged with the
design of producing.@[79]  Thus, the allegation of DTPA violations does
not constitute an occurrence.

Because we have held that there was no
occurrence, Appellee owed no duty to defend Appellant in the Cox-Appellant
suit, and we do not need to decide if there was Aproperty
damage@ or if
any exclusions to coverage apply.[80]  We overrule Appellant=s first
issue.

B.  Duty to
Indemnify

In its second issue, Appellant argues that the
that the trial court erred by granting Appellee=s motion
for summary judgment and denying Appellant=s motion
for summary judgment regarding the duty to indemnify.  We disagree.








An insurer=s duty
to defend its insured is separate and distinct from its duty to indemnify.[81]  The duty to indemnify is not based on the
pleadings in the underlying lawsuit, but on the facts that establish liability.[82]  It arises only after the insured has been
adjudicated legally responsible for damages in a lawsuit by judgment or
settlement.[83]  The duty to defend is thus broader than the
duty to indemnify; if an insurer has no duty to defend, it has no duty to
indemnify.[84]

Because we have held that Appellee did not owe Appellant a duty to
defend in the Cox-Appellant suit, Appellee also did not owe a duty to indemnify
Appellant.  We overrule Appellant=s second
issue.

C.  Article
21.55 of the Texas Insurance Code

Appellant contends in its third issue that the
trial court erred by granting Appellee=s motion
for summary judgment and denying Appellant=s motion
for summary judgment regarding former Article 21.55 of the Texas Insurance Code
because Appellee wrongfully refused and delayed payment of the Coxes= claim
for defense costs.  Because we have held
that the underlying claims did not trigger a duty to defend in this case, we
overrule Appellant=s third issue.

 

 

 








IV. 
Conclusion

Having overruled all of Appellant=s
issues, we affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

MCCOY, J. concurs without opinion.

DELIVERED:  March 9, 2006

 











[1]See Tex. Bus. & Com. Code Ann. '' 17.46(b), 17.50 (Vernon Supp. 2005).

 





[2]Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).





[3]Sw. Elec. Power Co., 73 S.W.3d at 215; Sci. Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997); Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).





[4]Great Am.,
391 S.W.2d at 47.





[5]Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).





[6]Great Am.,
391 S.W.2d at 47.





[7]Clear Creek Basin, 589 S.W.2d at 678.





[8]FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).





[9]Id.





[10] Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).





[11]Id.





[12]Id.





[13]Id. (quoting
Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 26
(Tex. 1965)).





[14]Heyden Newport Chem. Corp., 387 S.W.2d at 24.





[15]Merchs. Fast Motor Lines, 939 S.W.2d at 142.





[16]Heyden Newport Chem. Corp., 387 S.W.2d at 26.





[17]CU Lloyds of Tex v. Main Street Homes, Inc., 79 S.W.3d 687, 692 (Tex. App.CAustin
2002, no pet.); Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 728 (Tex.
App.CAustin 2000, no pet.); Pro‑Tech Coatings,
Inc. v. Union Standard Ins. Co., 897 S.W.2d 885, 892 (Tex. App.CDallas
1995, no writ).





[18]Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994).





[19]Sec. Mut. Cas. Co. v. Johnson, 584 S.W.2d 703, 704 (Tex. 1979).





[20]Mass. Bonding & Ins. Co. v. Orkin Exterminating
Co., 416 S.W.2d 396, 400 (Tex.
1967).





[21]Mid-Century Ins. Co. of Tex. v. Lindsey, 997 S.W.2d 153, 155 (Tex.
1999).





[22]Id.;
Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 827 (Tex. 1997).





[23]Argonaut Sw. Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973).





[24]Lindsey, 997
S.W.2d at 155.





[25]Id.





[26]See, e.g.,
Jim Johnson Homes Inc. v. Mid‑Continent Cas. Co., 244 F. Supp. 2d
706, 714 (N.D. Tex. 2003).





[27]Trinity Universal Ins. Co., 945 S.W.2d at 829; Great Am. Lloyds Ins.
Co. v. Mittlestadt, 109 S.W.3d 784, 786-87 (Tex. App.CFort
Worth 2003, no pet.).





[28]See, e.g.,
Am. States Ins. Co. v. Bailey, 133 F.3d 363, 372 (5th Cir. 1998); Jim
Johnson Homes, 244 F. Supp. 2d at 716-17.





[29]Jim Johnson Homes, 244 F. Supp. 2d at 716-17.





[30]Id.





[31]Lamar Homes,
Inc. v. Mid-Continent Cas. Co., 335 F. Supp. 2d 754, 760 (W.D. Tex.
2004).  After the insured appealed, the
Fifth Circuit Court certified three questions to the Texas Supreme Court, which
that court accepted:  (1) When a homebuyer
sues his general contractor for construction defects and alleges only damage to
or loss of use of the home itself, do such allegations allege an Aaccident@ or Aoccurrence@ sufficient
to trigger the duty to defend or indemnify under a CGL policy?  (2) When a homebuyer sues his general
contractor for construction defects and alleges only damage to or loss of use
of the home itself, do such allegations allege Aproperty damage@ sufficient to trigger the duty to defend or indemnify
under a CGL policy?  (3) If the answers
to certified questions 1 and 2 are answered in the affirmative, does Article
21.55 of the Texas Insurance Code apply to at CGL insurer=s breach
of the duty to defend?  Lamar Homes,
Inc. v. Mid-Continent Cas. Co., 428 F.3d 193 (5th Cir. 2005).





[32]Tealwood Constr., Inc. v. Scottsdale Ins. Co., No. Civ. A. 3:02‑CV‑2159‑L,
2003 WL 22790856, at *6 (N.D. Tex. Nov. 19, 2003).





[33]See, e.g.,
id.; Jim Johnson Homes, 244 F. Supp. 2d at 716-17; Hartrick v.
Great Am. Lloyds Ins. Co., 62 S.W.3d 270, 277-78 (Tex. App.CHouston
[1st Dist.] 2001, no pet.); Devoe v. Great Am. Ins., 50 S.W.3d
567, 572 (Tex. App.CAustin 2001, no pet.).





[34]See, e.g.,
Mid-Continent Cas. Co. v. JHP Development, Inc., No. Civ.
A. SA04CA‑192‑XR, 2005 WL 1123759, at *4 (W.D. Tex. Apr. 21, 2005);
Luxury Living, Inc. v. Mid-Continent Cas. Co., No. Civ. A. H‑02‑3166,
2003 WL 22116202, at *13-16 (S.D. Tex. Sept. 10, 2003); Great Am.
Ins. Co. v. Calli Homes, Inc., 236 F. Supp. 2d 693, 698-702
(S.D. Tex. 2002); Gehan Homes Ltd. v. Employers Mut. Cas. Co., 146
S.W.3d 833, 842 (Tex. App.CDallas 2004, pet. filed); CU Lloyd=s
of Tex., 79 S.W.3d at 693 (holding
that if intentionally  performed acts are
not intended to cause harm but do so because of negligent performance, there is
a duty to defend); see also Lennar Corp. v. Great Am. Ins. Co., No.
14‑02‑00860‑CV, 2006 WL 406609, at *12-13 (Tex. App.CHouston
[14th Dist.] Feb. 23, 2006, no pet. h.) (op. on reh=g).





[35]Gehan Homes,
146 S.W.3d at 842.





[36]Id.





[37]Id. at
842-43.





[38]Contra,
e.g., Tealwood Constr., 2003 WL 22790856, at *7.





[39]See Lamar Homes,
335 F. Supp. 2d at 760.





[40]Federated Mut. Ins. Co. v. Grapevine Excavation, 197 F.3d 720, 726 (5th Cir. 1999).





[41]Id. at 722.





[42]Id. at 725
(emphasis added).





[43]Jim Johnson Homes, 244 F. Supp. 2d at 718; Tealwood Constr., 2003 WL
22790856, at *6.





[44]Jim Johnson Homes, 244 F. Supp. 2d at 718.





[45]JHP Development,
2005 WL 1123759, at *4.





[46]Grapevine,
197 F.3d at 725 (citation omitted).





[47]See Mid-United Contractors, Inc. v. Providence Lloyds Ins. Co., 754
S.W.2d 824, 825 (Tex. App.CFort Worth 1988, writ denied).





[48]Id. at 828.





[49]Id. at
826-28.





[50]Id. at
827-28.





[51]See Lindsey,
997 S.W.2d at 155.





[52]King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 186 (Tex. 2002).





[53]Id.





[54]Id.





[55]Id. at 187.





[56]Id.





[57]Id. at
186-87.





[58]Id. at 188.





[59]See Lindsey,
997 S.W.2d at 155.





[60]Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 494 (Tex. App.CFort
Worth 2002, no pet.).

 

 





[61]Archon Invs. Homes Inc. v. Great Am. Lloyds Ins. Co., No. 01‑03‑01299‑CV, 2005 WL
2037177, at *5 (Tex. App.CHouston [1st Dist.] Aug. 25, 2005, pet. filed).





[62]Id.





[63]Id.





[64]See Lindsey,
997 S.W.2d at 155.





[65]See id.





[66]Archon Homes,
2005 WL 2037177 at *1, *5.





[67]Kelley-Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 469 (Tex. 1998) (citing Baptist
Mem=l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998)).





[68]Id. (citing Hoechst‑Celanese
Corp. v. Mendez, 967 S.W.2d 354, 356 (Tex. 1998)).





[69]King, 85
S.W.3d at 186.





[70]Jim Johnson Homes, 244 F. Supp. 2d at 712.





[71]See id. at
712-17.





[72]See King,
85 S.W.3d at 188.





[73]State Farm Lloyds v. Kessler, 932 S.W.2d 732, 738 (Tex. App.CFort
Worth 1996, writ denied).  The definition
of occurrence at issue in that case was Aan accident, including exposure to conditions, which
results in . . . property damage during the policy period.@  (Emphasis removed.)





[74]Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153, 156 (Tex. App.CHouston
[1st Dist.] 1990, writ denied).





[75]Id.





[76]See Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, 550 (Md. 1996).





[77]Hartrick,
62 S.W.3d at 278.





[78]Id.





[79]Lindsey, 997
S.W.2d at 155.





[80]See Tex. R. App. P. 47.1; Devoe, 50
S.W.3d at 572.





[81]Calli Homes,
236 F. Supp. 2d at 697.





[82]Id. at 698; Mittlestadt,
109 S.W.3d at 786-87.





[83]Collier v. Allstate County Mut. Ins. Co., 64 S.W.3d 54, 62 (Tex. App.CFort
Worth 2001, no pet.).





[84]Calli Homes,
236 F. Supp. 2d at 698; Farmers Tex. County Mut. Ins. Co. v. Griffin,
955 S.W.2d 81, 82 (Tex. 1997); Collier, 64 S.W.3d at 59; Lay v.
Aetna Ins. Co., 599 S.W.2d 684, 687 (Tex. Civ. App.CAustin
1980, writ ref'd n.r.e.).